[No. 8,101.—Department One.]
July 5, 1882.

# THE CITY OF LOS ANGELES v. THE SOUTHERN PACIFIC RAILROAD CO.

| 61 | 59 |
| 77 | 520 |
| 61 | 59 |
| 86 | 258 |

License Tax—Action—Ordinance—Charter of Los Angeles City—Constitutional Law.—By the provisions of § 5, Art. ii., of the Charter of Los Angeles (Stats. 1877–8 p. 645) the city is empowered to prescribe either an ordinary action for the recovery of a license tax, or a penalty for non-payment or both.

Id.—Id.—Id.—Case Distinguished.—In *Santa Clara* v. *Santa Cruz R. R. Co.*, 56 Cal. 151, it did not appear that the City of Santa Cruz had provided by ordinance for the collection of licenses by an ordinary action, or that the City Charter in terms authorized an ordinance providing for the collection of licenses by such an action.

ID.—ID.—ID.—ID.—RAILROAD COMPANY.—The city had power under its charter to establish a license tax, "for every steam rail road company having a depot in said city"; and the fact that the business of defendant extends beyond the city limits does not relieve it from the payment of a license tax for conducting its business within the city.

APPEAL from a judgment for the plaintiff and from an order denying a new trial in the Superior Court of Los Angeles County. HOWARD, J.

*Glassell & Smith*, for Appellant.

No authority has been conferred upon the city by its charter to impose license taxes upon the defendant. The power is claimed by the city under § 5, Art. 2, of its charter (Stat. 1877–78, p. 645) which reads as follows: "The Mayor and Council shall have power by ordinance * * * to license the carrying on and conducting of any and all professions, trades, callings, occupations or other business, by any person, natural or artificial, within the corporate limits of said city; to fix the amount of license tax thereon, etc."

We submit that this provision, (even if we consider it by itself and leave out of view other material elements of the case,) can not fairly be construed as applying to a business like that of the defendant which is carried on not between points in the city, but exclusively with points outside; and that on this point the case of the *Commonwealth* v. *Stodder*, 2 Cush. 574, is better reasoned than that of *Sacramento* v. *Cal. Stage Co.* 12 id. 134—relied upon by the Court.

But even admitting the authority of that case, there are other elements to be considered in this case which essentially distinguish it. In this case the defendant is a corporation operating a public franchise and having an express license " to carry persons and property on their railroad and receive tolls or a compensation therefor," and also " to erect and maintain all necessary and convenient buildings, stations, depots, fixtures and machinery, for the accommodation and use of their passengers, freight and business. (C. C. § 465, sub. div. 8 and 9; Hitt. Genl. Laws, Art. viii., § 842, sub. div. 8 and 9.)

From this it is clear that it was not intended to give to municipalities, the power to prohibit or hinder the defendant from doing those things which the State has given it an ex-

press license to do.   This point is in effect decided in the case of *Robinson* v. *Mayor and Alderman of Franklin*, 34 Am. Dec. 625 *et seq*.   This also appears to have been the construction placed upon the Act by the Legislature ; for the grant of express powers to municipalities to impose a specific license tax of twenty-five dollars, for each car upon street railroad companies (C. C. § 508) necessarily excludes the power of imposing such taxes upon other railroads, or for a greater amount upon street railroads.   *Expressio unius est exclusio alterius*.

While it is admitted that the State may give a right to municipalities to impose a tax upon the operations of the defendant, such a power is not to be presumed unless it clearly appears ; for such taxes necessarily enter into the problem of determining the proper rates of freights and fares, and in other respects, hinder and interfere with the operation of the public uses, with which the defendant is entrusted.

The decision in *San Jose* v. *S. J. & S. C. R. R. Co.*, 53 Cal. 475, rests upon the fact, that that was a street railroad, and came under the express provision of § 508 of the Civil Code, that it should pay a license tax upon each car not exceeding twenty-five dollars.

*H. T. Hazard*, for Respondent.

They say "the effect of this provision (if constitutional) is to authorize the Common Council to provide by ordinance for the collection of licenses in an ordinary action," and say, "This provision is clearly unconstitutional," citing in support thereof *Ex parte Wall*, 48 Cal. 279.

The authority cited does not sustain the proposition.   But we ask why can the Legislature not authorize city authorities to bring suit to enforce the payment of a license tax.   A perusal of the authorities cited by appellant's counsel decide directly that it can.   In the case of *San Jose* v *S. J. & S. C. R. R. Co.*, 53 Cal. 481, the Court says: "That the Legislature of this State has the power to tax occupations and to authorize municipal corporations to tax them, was settled as early as the case of the *People* v. *Coleman*, 4 Cal. 46, and we are not aware that the proposition has ever been denied or questioned in subsequent cases.   On the contrary it has been recognized and

re-affirmed in *Sacramento* v. *Cal. Stage Co.*, 12 Cal. 134."
(*Sacramento* v. *Crocker*, 16 id. 120: *Ex parte Hurl*, 49 id. 557.)

Take the case of *Commonwealth* v. *Stodder*, 2 Cush. 575,
also referred to by appellants, it will be seen that the Court
said, on page 569, "We are then brought to the inquiry whether
the authority vested in the Mayor and Aldermen by the above
mentioned statute will authorize this ordinance now sought
to be enforced."

Take the case referred to by them, of *Santa Cruz* v. *S. C.
R. R. Co.*, 56 Cal. 151.   On a petition for rehearing the Court
says: "There is nothing in the opinion filed in Department
No. 1 which can be construed as indicating a doubt as to the
power of the Legislature to authorize a City Council to pro-
vide the mode by which licenses may be collected, or of the
power of a City Council, when thus authorized, to provide
by ordinance for the collection of license taxes by civil actions
brought by the city in a municipal court or any other court.
Whatever is the true rule with reference to these matters no
such question is involved in the present case."

And reference is made in the opinion given on rehearing
to the case of *Sacramento* v. *Charles Crocker*, 16 Cal. 120, in
which it is directly decided that Sacramento had the power
to bring suit to enforce the payment of the amount of the
license tax under a charter not as full as ours.

The case of *San Jose* v. *S. J. & S. C. R. R. Co.*, 53 Cal. 476,
also cited by appellant's counsel, was an "action to recover an
amount alleged to be due for street car license under an or-
dinance referred to in the complaint."   And this Court affirmed
the judgment in favor of the City of San Jose for the pay-
ment of said license tax in a suit similar to the one at bar.

McKinstry, J.:

The action was brought to recover four hundred and twenty
dollars, alleged to be due for license tax for the months of
January to July, 1881, inclusive.

By the provisions of Section 5, Article ii., of the charter of
Los Angeles, Stats. 1877, 1878, p. 645, it is provided that the
"Mayor and Council shall have power by ordinance   *   *
*   *   to license the carrying on and conducting of any and
all professions, trades, callings, occupations, or other business

by any person, natural or artificial, *within the corporation limits of said city*; to fix the amount of license tax thereon, and to be paid by such persons therefor, at such sums respectively, as the said Council shall think equitable and just; and may, in the name and for the benefit of said corporation, enforce, *in such manner as it see proper to prescribe,* the payment of such taxes by suit, either with or without attachment, in the proper court, under the laws of this State, or by fine or imprisonment, or either, or in such other manner as in said ordinances may be provided."

The complaint alleges the enactment of an ordinance therein set forth, which provides that " *it shall be unlawful* for any person to conduct or carry on within the corporate limits of Los Angeles any vocation, trade, calling or employment in this ordinance specified, either in their own names, etc.,  *  *  *  * or as agents, etc.,  *  *  *  * without first procuring from said city a license so to do;" and in effect that any person carrying on business without a license shall be deemed guilty of a misdemeanor ; and also " that the amount of said license shall be deemed a debt due to the said city of Los Angeles," and that all persons carrying on business in violation of the ordinance shall be liable to an action in the name of the city in any court of competent jurisdiction.

Among the licenses established by the ordinance is the following :

" For every steam railroad company having a depot in said city, sixty dollars."

It will be seen that by the charter the mayor and council are authorized to enforce the payment of licenses either by suit in the proper court under the laws of the State, or by fine or imprisonment, or either, or in such other manner as in said ordinances may be provided. For the purpose of this case it may be admitted that an attachment may not issue in an action brought by the city to recover a license tax, unless the general law of the State permits an attachment in like cases. But the power remains in the city to collect licenses in the proper court and "under the laws of the State," that is to say, by suits brought in manner and form as suits for moneys due may be prosecuted under the laws of the State.

The ordinance called to our attention in express terms de-

clares that "the amount of said license" shall be deemed a debt due to the city of Los Angeles, for which an action may be maintained; "and all such persons, bodies corporate, etc., shall be liable to an action in the name of the City of Los Angeles, in any court of competent jurisdiction, for the amount of the monthly license of such business as he or they may be engaged in, with costs of suit."

The words in Section 5 of Article ii. of the charter, "in such manner as it see proper to prescribe," taken with the context, empower the city to prescribe either an ordinary action for the recovery of the license, or a penalty for non-payment of the license, or both. That a municipality, when authorized, may prescribe a penalty for a violation of an ordinance is well established; it is equally clear that a municipality may be authorized to bring a civil action, in the competent court, for the recovery of a license tax. In neither case is the legislative power of the senate and assembly delegated. On the contrary, the Constitution provides for the creation of cities and the transfer to them of appropriate legislative functions. (*Ex parte Wall*, 48 Cal., 279.)

In *Santa Cruz* v. *Santa Cruz R. R. Co.*, 56 Cal. 151, it did not appear that the city of Santa Cruz had provided by ordinance for the collection of licenses by an ordinary action, or that the city charter in terms authorized an ordinance providing for the collection of licenses by such action. The fact that the business of defendant extends beyond the city limits does not relieve it from the payment of a license tax for conducting its business within the city. (*Sacramento* v. *Cal. Stage Co.*, 12 Cal. 134.) Defendant is subject to regulation in many respects by the state, yet it is doing a business in Los Angeles which, with its property there situate, is protected by local authorities. It is interested in many police expenditures, and may as reasonably be charged a local license as may those engaged in other businesses.

Judgment and order affirmed.

Ross and McKEE, JJ., concurred.