WESTERN UNION TELEGRAPH COMPANY V. CITY OF
FREMONT.

FILED MARCH 20, 1894. No. 6208.

1. **Municipal Corporations:** OCCUPATION TAX: AUTHORITY
TO LEVY. Under section 52, chapter 14, article 2, Compiled
Statutes, 1891, each city of the second class having more than

five thousand inhabitants has the power to levy a tax upon every business or occupation carried on within the territorial limits of the municipality, excepting alone those enumerated in the proviso clause of said action.

2. **Municipal authorities** are powerless to license or tax any business or avocation conducted exclusively outside of the municipality.

3. **Telegraph Companies:** CITIES: POWER TO IMPOSE LICENSE TAX. A city of the above class may lawfully enact an ordinance imposing on telegraph companies a license tax of a reasonable sum per annum for the privilege of transacting the business of telegraphy within the city; and the fact that the telegrams received and delivered within the city were transmitted over the lines of the telegraph company from other points within the state, or that the messages received by it at its office or place of business in the city were transmitted to various other places in the state, does not invalidate the tax. IRVINE, C., dissenting.

4. **Interstate Commerce:** MUNICIPAL CORPORATIONS: TAX ON MESSAGES. State and municipal authorities are powerless to impose a tax upon messages to or from other states, since such a tax would be in conflict with that clause of the federal constitution which gives to congress the exclusive power to regulate commerce among the several states.

5. **Telegraph Companies:** INTERSTATE COMMERCE: OCCUPATION TAX. Where a telegraph company is engaged in both interstate and intrastate business, an ordinance levying an occupation tax on that portion of such business which is carried on wholly within the state is not repugnant to section 8, article 1, of the constitution of the United States, since it in no way interferes with, or regulates, interstate commerce.

6. **An occupation tax** may be collected by ordinary suit, where the ordinance imposing the tax so provides.

ERROR from the district court of Dodge county. Tried below before MARSHALL, J.

The opinion by the chief justice contains a statement of the case.

*Estabrook & Davis*, for plaintiff in error:

The legislature has not invested the city of Fremont

with the power to tax the business described in the ordinance. (*Leloup v. Port of Mobile*, 127 U. S., 640; *Western Union Telegraph Co. v. Alabama*, 132 U. S., 472; *City of San Francisco v. Western Union Telegraph Co.*, 31 Pac. Rep. [Cal.], 10; *Robbins v. Shelby County Taxing District*, 120 U. S., 489; *Moran v. City of New Orleans*, 112 U. S., 69; *Harman v. City of Chicago*, 147 U. S., 396; *Pacific Express Co. v. Seibert*, 44 Fed. Rep., 316, 142 U. S., 339; *City of St. Louis v. Laughlin*, 49 Mo., 559; *City of Dubuque v. Northwestern Life Ins. Co.*, 29 Ia., 9; *Mays v. City of Cincinnati*, 1 O. St., 273; *Caldwell v. City of Lincoln*, 19 Neb., 574; *City Council of Charleston v. Postal Telegraph Co.*, 9 Ry. & Corp. Law J. [S. Car.], 129.)

It is not within the power of the legislature to delegate to one municipal corporation the power to tax a business which is not carried on within the limits of such corporation. (*Wells v. City of Weston*, 22 Mo., 384; Desty, Taxation, ch. 11; Cooley, Taxation, ch. 3; *City of Charleston v. Postal Telegraph Co.*, 9 Ry. & Corp. Law J. [S. Car.], 129; Thompson, Law of Electricity, sec. 518.)

*F. Dolezal, City Attorney, contra:*

The license tax in this case is not a tax on or a regulation of interstate commerce. (*Ratterman v. Western Union Telegraph Co.*, 127 U. S., 411.)

In addition to the tax on realty, personal property, and money an occupation tax may be levied. The legislature has the power to vest municipal corporations with authority to levy and collect license or occupation taxes. (*State v. Bennett*, 19 Neb., 191; *City of Columbus v. Hartford Ins. Co.*, 25 Neb., 83; *Magneau v. City of Fremont*, 30 Neb., 843; *Templeton v. City of Tekamah*, 32 Neb., 542.)

The ordinance levies the tax only upon that business of the telegraph company which is done within the city. The tax is valid. (*City of Los Angeles v. Southern P. R. Co.*,

61 Cal., 59, and cases cited; *City of Sacramento v. California Stage Co.*, 12 Cal., 134.)

NORVAL, C. J.

This was an action by the city of Fremont to recover from the plaintiff in error an occupation tax levied under and in pursuance of an ordinance of said city. A general demurrer to the petition was overruled, and the telegraph company having elected to stand upon its demurrer, judgment was entered by the court in favor of the city for $150 and costs of suit.

The petition, after alleging the incorporation of plaintiff and defendant, avers, in substance, that on the 1st day of April, 1891, and continuously ever since said day, there was and now is conducted and carried on within the corporate limits of said city of Fremont, by various persons and corporations, the business and occupation of receiving, transmitting, and delivering telegraph messages, not including the receipt, transmission, or delivery to or from any department, agency, or agent of the United States, and not including the receipt, transmission, or delivery of any message which is interstate commerce; that on the 23d day of April, 1891, the duly constituted authorities of the city of Fremont, in the manner provided by law, duly passed and adopted an occupation tax ordinance, a copy of which is attached to the petition; that said ordinance was duly approved by the mayor of said city, and published as required by statute, and ever since continuously has been, and now is, in full force and effect, by which said ordinance a license tax of $150 per annum was levied upon the aforesaid business and occupation, and it became and was the duty of each person and corporation engaged therein within said city to pay such tax; that the defendant, on the date aforesaid and prior thereto, and continuously ever since, was, and is, engaged in, and carrying on within the territorial limits of said city, the business and occupation specified

in paragraph No. 1 of section 1 of said ordinance; that there was due the plaintiff from said defendant on the date last aforesaid the sum of $150, as a license tax on its said business and occupation, no part of which has been paid, although the payment of said sum has been requested by the city, and refused by the defendant. It is further alleged in the petition "that besides the business and occupation aforesaid, and in addition thereto, the said defendant at the time aforesaid was, and has since continuously been, engaged in the business of sending and receiving messages by telegraph which are interstate commerce in said city, and said defendant had theretofore duly accepted the terms of the act of congress passed in the year 1866 relating to telegraphs and telegraph companies and was and is entitled to all the benefits of said act, and has availed itself of all the benefits of said act and performed its duties thereunder, and has telegraph lines extending throughout the several states of the United States, and to and from and among said several states, all of which said lines said defendant operates and operated during all the aforesaid times by the transmission on and by means of said telegraph lines telegraph messages; that for and during the several years herein mentioned under the laws of this state there has been assessed and defendant has paid property tax on the lines, poles, instruments, realty, and office furniture and stationery supplies that said defendant owns and has located and kept within the state of Nebraska, which said tax on said articles thus paid is and was imposed and collected under and by virtue of sections 39 and 40 of chapter 77, relating to revenue, of the Compiled Statutes of Nebraska, annotated, 1891."

Section 1 of the ordinance levying the tax in question reads as follows:

"Section 1. That there is hereby levied a license tax on each and every occupation and business within the limits of this city, in this section hereinafter enumerated, to raise

a revenue thereby in the several different sums of the several different businesses and occupations respectively, as follows:

"No. 1. The sum of one hundred and fifty dollars per year on the business and occupation of receiving messages in this city from persons in this city and transmitting the same by telegraph from this city within this state to persons and places within this state; and receiving in this city messages by telegraph transmitted within this state from persons and places in this state to persons within this city and delivering the same to persons in this city, excepting the receipt, transmission, and delivery of any such messages to and from any department, agency, or agent of the United States, and excepting the receipt, transmission, and delivery of any such messages which are interstate commerce; the business and occupation of receiving, transmitting, and delivering of the messages herein excepted is not taxed hereby."

Paragraphs 2 to 16 inclusive of said section impose taxes on various other occupations.

Section 2 of said ordinance provides that "the license tax by this ordinance levied is not levied upon any business or occupation which is interstate or which is done or conducted by any department of the government of the United States or of this state, or any officer of the United States or of this state in the course of his official duties, or by any county or other subdivision of this state, or its officer as such."

Section 3 provides, among other things, that on all occupations on which a tax is levied at a yearly rate the year shall begin on the last Tuesday in April of each year and end on the last Tuesday of the year following, and that such tax shall be due and payable in advance.

Section 4 makes it the duty of every person, partnership, firm, and corporation carrying on any business within the city on which a tax is imposed by the ordinance to pay

said tax at the time specified in the ordinance for its payment.

Section 5 declares that "the tax hereby levied shall be paid to the treasurer of this city, who, upon payment thereof by any person, shall give a receipt, properly dated and specifying the person paying, the occupation, amount, and for what time said tax is paid; said treasurer shall keep proper account of said tax."

Section 6 provides for the collection of the unpaid license tax by the city treasurer by distress and sale of the personal property of the person or corporation owing such tax.

Section 7 authorizes the city attorney to bring a suit in any court of competent jurisdiction to recover the amount of any tax levied by the ordinance, whenever the city treasurer shall deem himself unable to collect the same by distress.

It has been repeatedly decided by this court that under the constitution of the state the legislature may by general law confer upon cities and villages the power to levy and collect occupation taxes. (*State v. Bennett*, 19 Neb., 191; *City of Columbus v. Hartford Ins. Co.*, 25 Neb., 83; *Magneau v. City of Fremont*, 30 Neb., 843; *Templeton v. City of Tekamah*, 32 Neb., 542.) The authority of the law-making body to invest municipal corporations with the power to pass ordinances imposing license or occupation taxes is not now questioned; but it is insisted on the part of the telegraph company that the legislature has not invested the city of Fremont with authority to license or tax the business described in the ordinance in question. The proposition stated we will now consider.

Section 52, chapter 14, article 2, Compiled Statutes, 1891, reads as follows:

"Section 52. In addition to the powers heretofore granted cities under the provisions of this chapter, each city may enact ordinances or by-laws for the following pur-

poses:   *   *   *   VIII.  To raise revenue by levying and collecting a license tax on any occupation or business within the limits of the city, and regulate the same by ordinance. All such taxes shall be uniform in respect to the classes upon which they are imposed; *Provided, however,* That all scientific and literary lectures and entertainments shall be exempt from such taxation, as well as concerts and other musical entertainments given exclusively by citizens of the city."

It will be observed that the foregoing section authorizes cities of the class of the city of Fremont to impose a tax upon every business and occupation carried on within the territorial limits of the municipality, excepting only those mentioned in the proviso clause of the section quoted.  The tax must be reasonable, and not burdensome, as well as uniform in respect to the class upon which the same is levied. No question, however, is raised as to the reasonableness of the tax sought to be collected by this action.  The legislature has not vested municipal corporations with authority to license or tax any business or occupation carried on exclusively outside of the municipality.  There can be no doubt of it.  The language of the statute is "on any occupation or business within the limits of the city."

It is argued that the ordinance before us levies a tax on the business of plaintiff in error which is not carried on within the boundaries of the city of Fremont.  If this be true, the tax is invalid, for the want of power in the municipality to impose it.  But such is not the scope and effect of the ordinance, since it does not attempt to tax the business of telegraphy, which is conducted wholly outside of the corporate limits of the city, but is restricted to that portion of such business as is entirely within the limits of the municipality.  It further excludes government messages and messages which are interstate commerce.  It is the business and occupation only of receiving, delivering, and transmitting messages within the city which are sought to be

taxed by the ordinance. The fact that the telegrams re-
ceived and delivered by plaintiff in error within the city of
Fremont were transmitted over its lines from other points
within the state, or that the messages received by it at its
office or place of business in Fremont are transmitted to
various other places in the state, does not invalidate the
tax. It is that portion of the business alone the telegraph
companies transact in the city upon which a license tax is
levied by the ordinance. The petition expressly avers,
which the demurrer admits to be true, that plaintiff in error
was and is engaged in and carrying on within the corporate
limits of said city the business and occupation described in
paragraph 1 of the ordinance under consideration. Plaint-
iff in error is therefore carrying on a business or occupation
in the city of Fremont, within the meaning of the statute,
and is liable to the license tax imposed by the municipal
authorities.

*City of Sacramento v. California Stage Co.*, 12 Cal., 134,
was an action for the recovery of a license tax levied by
an ordinance of the city of Sacramento upon stage com-
panies engaged in the business of carrying passengers to
and from Sacramento city. It was claimed there, as here,
that the ordinance was invalid because it authorized the
imposition of a tax upon a business not carried on entirely
within the city limits. The ordinance and the tax levied
thereunder were sustained. Baldwin, J., speaking for the
court, says: "The question is made whether, inasmuch as
the larger portion of this work of transportation is done
without the territorial limits of the city, the authorities have
a right to levy the tax upon them; and on this question
we have no doubt. The company receive and discharge
their passengers, and make contracts here for their con-
veyance, and they have their offices and property here,
within the protection of the municipal laws. The mere
fact that the business of carrying the passengers is not
within the municipal limits does not make the receiving

and discharging of them, and for contracting for them, less a business here.    If this business is not a business in Sacramento, it is difficult to say where it is." The principle announced in the above case was recognized and applied by the same court in the *City of Los Angeles v. Southern P. R. Co.,* 61 Cal., 59.    In that case the ordinance of the city of Los Angeles levied a license tax of $60 on every steam railroad company having a depot in said city.    The court, in passing upon the case, say : " The fact that the business of defendant extends beyond the city limits does not relieve it from the payment of a license tax for conducting its business within the city. (*City of Sacramento v. California Stage Co.,* 12 Cal., 134.). Defendant is subject to regulation in many respects by the state, yet it is doing a business in Los Angeles, which, with its property there situate, is protected by local authorities.    It is interested in many police expenditures, and may as reasonably be charged a local license as may those engaged in other business."

It is difficult to perceive a distinction in principle between the cases above referred to and the question before us.    These authorities, it seems to us, are directly in point and sustain the authority of the defendant in error to impose a specific license tax upon the telegraph company for conducting its business within the corporate limits of the city of Fremont.    Similar taxes have often been levied on avocations and callings where a portion of the business is transacted and carried on outside of the territorial jurisdiction of the city imposing the same.    Physicians and lawyers are frequently called upon to pay an occupation tax, yet the persons belonging to either of these professions transact a large portion of their business outside of the city in which their offices are located.    The same is likewise true of wholesale dealers, livery men, contractors and builders, also persons engaged in other callings which could be mentioned; and will it be contended that the li-

cense tax levied upon any of the occupations, or pursuits named, would be invalid? Clearly it would be, if the tax in the case at bar cannot be sustained.

In *Commonwealth v. Stodder*, 2 Cush. [Mass.], 562, cited in the brief of counsel for plaintiff in error, the opinion of the court contains language directly opposed to the holding of the California court in the cases above cited, and from which we have quoted, but the reasoning of the Massachusetts court is unsatisfactory; besides, the statute, under which the ordinance there considered was adopted, is quite different from the one governing the city of Fremont. The Massachusetts statute authorized the mayor and aldermen of the city of Boston to adopt rules and orders " for the due regulation in such city, of omnibuses, stages," etc. The title of the act was "An act to prevent obstructions in the streets of cities and to regulate hackney coaches and other vehicles." It was held that the power conferred was not a tax-leving power, but that " all the apparent object of the act may be secured by due regulations as to the time, place, and mode of using such vehicles, irrespective of any payment of a special duty or tax upon them, as provided in the ordinance." Since the statute there under review conferred no power upon the municipality to levy an occupation tax upon omnibuses and stage coaches, it is obvious that what the court say about want of authority of the city of Boston to require the proprietors of omnibuses and other vehicles running into and out of Boston to pay a license tax was not necessary to a decision of the case before the court.

In the case at bar it is urged that the ordinance we have been considering does not impose a license tax, therefore the tax in question is invalid. The charter of the city of Fremont authorizes levying and collecting " a license tax." Section 1 of the ordinance declares that " there is hereby levied a license tax on each and every occupation and business within the limits of this city," etc. The ordinance, therefore, does levy a "license tax." That

the ordinance makes no provision for the issuance of a fomal license is immaterial.    By section 5 the city treasurer is required to give a receipt to the person paying the tax, "properly dated and specifying the person paying, the occupation, amount, and for what time said tax is paid." It is not believed that a provision for the issuance of a license is essential to the validity of the tax, but if it were, the receipt provided for in section 5 is a sufficient compliance.    It will be observed that the ordinance authorizes the collection of occupation taxes levied thereunder by suit in any court of competent jurisdiction.    That the payment of such taxes may be enforced by an ordinary action at law, when the ordinance provides for the collection in that manner, we do not doubt. (*City of Sacramento v. Crocker*, 16 Cal., 119; *City of Los Angeles v. Southern P. R. Co., supra.*)

It is further urged by counsel for the telegraph company that the ordinance imposes a burden upon interstate commerce, and consequently is repugnant to that clause of the federal constitution which gives to congress the power to regulate commerce with foreign nations and among the several states.    The power to regulate interstate commerce is within the exclusive power of congress, and it is well settled by repeated decisions of the highest judicial tribunal of the land that a state law which imposes regulations, or restrictions, which operate to hinder or embarrass the free and speedy transportation of commerce between the states, is unconstitutional and void.    It has likewise been decided that the telegraph is an instrument of commerce, and that the power to regulate telegraph companies in respect to interstate business is vested in congress alone.    In other words, the states are powerless to impose a tax upon messages where communication is transmitted from one state to another. (*Pensacola Telegraph Co. v. Western Union Telegraph Co.,* 96 U. S., 1; *Western Union Telegraph Co. v. Texas,* 105 U. S., 460; *Western Union Telegraph Co. v. Alabama State Board of Assessment,* 132 U.S., 472.)

The supreme court of the United States in more than one case has said that a state may lawfully impose a tax upon a telegraph company for telegrams carried wholly within the limits of the state in which such tax is levied. We will now refer to some of the decisions of that tribunal so holding.

In *Western Union Telegraph Co. v. Texas, supra,* the question under consideration was the validity of a statute of Texas requiring telegraph companies doing business in the state to pay tax upon each telegram passing over its lines whether wholly within the limits of the state or coming into the state from a point without, or going from the state out of it. The statute was held void, in so far as it related to messages carried through more than one state, as an interference with or a regulation of commerce among the states. It was further decided that the state had the power to levy a tax on telegrams carried entirely within the limits of the state. Chief Justice Waite, in delivering the opinion of the court in that case, said: "The Western Union Company, having accepted the restrictions and obligations of this provision by congress, occupies in Texas the position of an instrument of foreign and interstate commerce, and of a government agent for the transmission of messages on public business. Its property in the state is subject to taxation the same as other property, and it may undoubtedly be taxed in a proper way on account of its occupation and its business. The precise question now presented is whether the power to tax its occupation can be exercised by placing a specific tax on each message sent out of the state, or sent by public officers on the business of the United States." The learned chief justice in the same opinion, after holding that the tax on telegraph messages sent from points without the state to points within, and from points within to points without, is a regulation of interstate commerce and therefore void, uses the following language: "The rule that the regulation

of commerce, which is confined exclusively within the jurisdiction and territory of a state and does not affect other nations, or states, or the Indian tribes, that is to say, the purely internal commerce of a state belongs exclusively to the state, is as well settled as that the regulation of commerce which does affect other nations, or states, or the Indian tribes, belongs to congress. Any tax, therefore, which the state may put on messages sent by private parties, and not by the agents of the government of the United States, from one place to another, exclusively within its own jurisdiction, will not be repugnant to the constitution of the United States." To the same effect is *Western Union Telegraph Co. v. Pennsylvania*, 128 U. S., 39.

In *Leloup v. Port of Mobile*, 127 U. S., 640, it was ruled that telegraphic communications, when carried on between different states, are interstate commerce and within the power of regulation conferred upon congress, and that a general occupation tax on a telegraph company affects its entire business, interstate as well as domestic, and is unconstitutional. In that case a tax ordinance of the city of Mobile imposed a license tax of $1,225 on each telegraph company for the privilege of transacting telegraph business in the city. It is clear that the ordinance is repugnant to the commercial clause of the federal constitution, since it was a restriction upon interstate commerce. In that case the tax was levied upon its entire business, interstate as well as that carried on wholly within the state, while in the case at bar the tax was upon intrastate business alone. In the case referred to, the right of the state to tax the telegraph company's intrastate business was stated.

In *Ratterman v. Western Union Telegraph Co.*, 127 U. S., 411, it was held that a single tax, assessed under the Revised Statutes of Ohio, upon the receipts of a telegraph company which were derived partly from interstate commerce and partly from commerce within the state, but which were returned and assessed in gross and without sep-

49

aration or apportionment, is not wholly invalid, but is invalid only in proportion to the extent that such receipts were derived from interstate commerce. (See *Western Union Telegraph Co. v. Alabama State Board of Assessment, supra.*)

In the *Case of the State Freight Tax*, 15 Wall. [U. S.], 232, the court had under consideration a statute of the state of Pennsylvania which provided for a tax upon all freight carried by any railroad or canal in the state. The Reading Railroad Company resisted the tax, claiming that it was levied on interstate commerce. The supreme court of the United States held that the tax on the freight transported wholly within the state was valid, but that such freight as was brought into or carried out of the state, being interstate commerce, was not subject to state taxation.

The legislature of the state of Missouri in 1889 enacted a law imposing a tax upon express companies of two per cent of their "receipts for business done within the state." Under the provision of said law taxes were assessed against the Pacific Express Company, a Nebraska corporation carrying on business as an express company in the state of Missouri and several other states. The express company brought suit in the circuit court of the United States for the district of Missouri to restrain the collection of said tax, alleging, among other grounds, that the statute of Missouri, above mentioned, imposed a tax upon interstate commerce and therefore infringed the constitution of the United States. The court, by Caldwell J., held that the tax was not a regulation of, or an interference with, interstate commerce. (*Pacific Express Co. v. Seibert*, 44 Fed. Rep., 310.) An appeal was prosecuted to the supreme court of the United States, where the decree was affirmed, the opinion being reported in 142 U. S., 339. Mr. Justice Lamar, speaking for the court, uses this language: "The first proposition, that the statute imposes a tax upon interstate commerce, and is, therefore, violative of what is

known as the commercial clause of the constitution, is un-
sound.   It is well settled that a state cannot lay a tax upon
interstate commerce in any form, whether by way of duties
laid on the transportation of the subjects of that commerce
or the receipts derived from that transportation, or on the
occupation or business of carrying it on, for the reason
that such taxation is a burden on that commerce, and
amounts to a regulation of it, which belongs to congress.
(*Lyng v. Michigan*, 135 U. S., 161; *Leloup v. Port of Mo-
bile*, 127 U. S., 640; *Western Union Tel. Co. v. Alabama*,
132 U. S., 472; *McCall v. California*, 136 U. S., 104;
*Norfolk & Western R. Co. v. Pennsylvania*, 136 U. S.,
114.)   The question on this branch of the case, therefore,
is, was the business of this express company in the state of
Missouri, on the receipts from which the tax in question
was assessed under this act, interstate commerce?   The alle-
gation of the bill is very positive that in the prosecution
of its business as an express company the complainant is
engaged, in part, in the transportation of goods and other
property between the states of Nebraska, Kansas, Texas,
and other states of the Union and the state of Missouri;
and also in the business of carrying goods between differ-
ent points within the limits of the state of Missouri.   The
question on this point, therefore, is narrowed down to the
single inquiry, whether the tax complained of in any way
bears upon or touches the interstate traffic of the company,
or whether, on the other hand, it is confined to its intra-
state business.   We think a proper construction of the
statute confines the tax which it creates to the intrastate
business, and in no way relates to the interstate business of
the company.   The act in question, after defining in its
first section what shall constitute an express company or
what shall be deemed to be such in the sense of the act,
requires such express company to file with the state auditor
an annual report 'showing the entire receipts for business
done within this state of each agent of such company doing

business in this state,' etc., and further provides that the amount which any express company pays 'to the railroads or steamboats within this state for the transportation of their freight within this state' may be deducted from the gross receipts of the company on such business; and the act also requires the company making a statement of its receipts to include, as such, all sums earned or charged 'for the business done within this state,' etc. It is manifest that these provisions of the statute, so far from imposing a tax upon the receipts derived from the transportation of goods between other states and the state of Missouri, expressly limit the tax to receipts for the sums earned and charged for the business done within the state. This positive and oft-repeated limitation to business done within the state, that is, business begun and ended within the state, evidently intended to exclude, and the language employed certainly does exclude, the idea that the tax is to be imposed upon the interstate business of the company. 'Business done within this state' cannot be made to mean business done between that state and other states. We, therefore, concur in the view of the court below that it was not the legislative intention, in the enactment of this statute, to impinge upon interstate commerce or to interfere with it in any way whatever; and that the statute, when fairly construed, does not in any manner interfere with interstate commerce."

The principle deducible from these decisions is, that while the state cannot tax either the interstate or government business of a telegraph company, it possesses the power to impose a tax upon the business of such company as is carried on wholly within the state, provided such tax is not levied in gross upon state as well as interstate business, but is restricted to intrastate business solely. And in view of the foregoing authorities, and especially the last one quoted from, we have no hesitation in holding that the ordinance of the city of Fremont in no manner places a

burden or restriction upon interstate commerce, nor does it tax the agency of the federal government. The ordinance expressly excludes from its operation all government and interstate business. The plaintiff in error could transmit messages relating to government business and carry communications from this state to points in other states to persons and places within this state unmolested and without paying to the city of Fremont a cent as license tax therefor. The only difference between this case and *Pacific Express Co. v. Seibert, supra,* is this : In the latter the tax levied was a certain per cent on the gross amount of the receipts of the express company derived from the business done by it within the state, while here a specified sum was imposed upon telegraph companies for the privilege of transacting within the city of Fremont intrastate business. The case cited is directly in point on the question before us and must control our decision herein. The judgment of the district court is right, and is therefore

AFFIRMED.

IRVINE, C., dissenting.

Having taken part in the hearing and consideration of this case, and having reached a conclusion upon one branch thereof different from that stated in the opinion of the court, I desire to express my views upon that branch of the case.

The conclusion reached by the court is that the occupation described in the ordinance is an occupation or business "within the limits of the city" and therefore within the legislative grant of authority to tax. In this view I cannot concur. As a question of authority I concede that the case referred to, of *Commonwealth v. Stodder,* 2 Cush. [Mass.], 562, is not in point, and I further concede that the case of *City of Sacramento v. California Stage Co.,* 12 Cal., 134, supports the view of the court. It is to be re-

marked in regard to the latter case that it is an early case in the history of California jurisprudence decided by two judges only. Mr. Justice Field, now of the supreme court of the United States, and then a member of the California supreme court, either took no part in the consideration of the case or did not concur in the opinion of the majority. The opinion is very brief and unsatisfactory. So far as the reasons of the court can be gathered from the opinion, the decision was based principally upon the theory that the business of receiving and discharging passengers within the city was separate from that of transporting passengers between Sacramento and other places. I do not think this view sound. It might as well be said that in a mercantile establishment the business of wrapping up goods and handing them over the counter to the customers is separate from the business of selling the goods. Another case relied upon in the opinion of the court is that of *City of Los Angeles v. Southern P. R. Co.*, 61 Cal., 59. There the tax was imposed upon every steam railway company "having a depot in the city." The tax was not imposed upon the business of discharging from its trains within the city passengers carried into the city from points without, or upon the business of taking upon its trains within the city passengers to be transported to points without. That form of an ordinance would have made the case analogous to that before us. The tax was not even upon the business of operating a railroad within the city, but extended only to railroads having a depot in the city, and seems to be rather a tax upon the privilege of maintaining a depot than a tax upon the occupation. Even in that view the correctness of the decision may well be doubted. I think a better test of what constitutes an occupation within the limits of a city is found in the cases relating to interstate commerce, where courts have been called upon to define what constitutes a business within a state. As a preliminary to this discussion it may be well

to state that in considering the validity of a tax the language employed, or the form or agency for its enforcement, is not the point to be regarded, but the court should look beyond the form of the tax and determine upon what the real burden is imposed. This point is well stated by Mr. Justice Strong in the *State Freight Tax Case*, 15 Wall. [U. S.], 232, as follows: "It has repeatedly been held that the constitutionality or unconstitutionality of a state tax is to be determined, not by the form or agency through which it is to be collected, but by the subject upon which the burden is laid. This was decided in the cases of *Bank of Commerce v. New York City*, 2 Black [U. S.], 620, in the *Bank Tax Case*, 2 Wall. [U. S.], 200, *Society of Savings v. Coite*, 6 Wall. [U. S.], 594, and *Provident Institution v. Massachusetts*, 6 Wall. [U. S.], 611. In all these cases it appeared that the bank was required by the statute to pay the tax, but the decisions turned upon the question what was the subject of the tax, upon what did the burden really rest, not upon the question from whom the state exacted payment into its treasury."

If we examine this ordinance it seems perfectly clear that the burden of the tax here sought to be imposed is not merely upon the receiving and delivery of messages within Fremont, but that it is upon the business of transmitting messages between Fremont and other points outside of Fremont but within the state. The delivery of messages received in Fremont from the wires to the persons to whom they are addressed, and the receipt of messages from senders thereof at the telegraph office for transmission over the wires, are acts merely incidental to the business of the telegraph company. They are not in themselves a business or an occupation. The gist of the business of the company consists of the transmission of messages over the wires; and the transcription of the messages to paper, their delivery to the persons addressed, and the receipt of written messages at the office of the company from senders thereof are mere

incidents, and ·inseparable from the principal operations, just as the business of a carrier consists of transporting goods, and the delivery to and .receipt from the carrier of the goods at the terminal points are incidental to the transaction of the business, and do not constitute in themselves a business or occupation. The authority of a municipality does not extend beyond its limits. The grant of power to impose taxes, upon which this ordinance is founded, does not purport to confer upon the municipality the power to tax anything beyond the limits of the city. For the purpose of this discussion all occupations may be divided into three classes. First—Occupations without the limits of the city. Second—Occupations partly without and partly within the city. Third—Occupations wholly within the city. I think that the grant of authority to tax could only be conferred and was only conferred as to such occupations as are wholly within the city. Where a portion of a business is wholly carried on within a city, such portion might be taxed, although another portion were conducted wholly outside. But where the business in its nature requires that every part· thereof shall extend beyond its borders, it is different. No portion can then be said to be within the city. In the opinion of the court reference is made to occupation taxes upon physicians and lawyers who have made their domicile within the city but a large portion of whose practice may be beyond its borders. The cases are not analogous for the reason that. professional engagements are personal in their character and necessarily follow the domicile of the taxpayer. Reference is also made to wholesalers of merchandise and persons engaged in similar occupations. I will concede that a wholesale grocer, for instance, might be subjected to an occupation tax by the city in which his place of business is located, although all his sales might be to persons outside of the city and involve the shipment of the goods sold to points outside; but that business consists in its essentials in the sale

of the goods, and is within the city. I contend, however, that the business of transporting the goods after their sale from the city to points outside the city would not be a business within the city and not subject to taxation.

As I stated before, I believe a test of the question what constitutes a business within the city may be found in the cases relating to interstate commerce. A license tax may not be levied upon a business not within the city, because upon general principles, as well as because of express legislation, the city has no power to impose a tax upon business not " within the city." Similarly, a state may not levy a tax upon business not within the state, for the reason that the federal constitution grants to congress the exclusive power of regulating commerce among the states, and therefore prohibits a state from imposing a tax upon commerce extending beyond its borders, that is, not " within the state." If, therefore, the business of transmitting telegraphic messages between a city and points without the city is business within the city, then the business of transmitting messages between a point within a state and points without the state is business within the state, and therefore not interstate commerce. If that position be correct, then a tax levied by a state upon the business of a telegraph company, a part of which business consists in transmitting messages between points in the state and points without, is not a burden upon interstate commerce and is valid. The law, however, is otherwise. Many cases in the supreme court of the United States might be cited upon the question. There is one, however, which reviews the prior cases in so clear and forcible a manner that a reference to that case will be made in lieu of here reviewing the prior cases.

By a statute of Alabama a tax was levied "on the gross amount of the receipts by any and every telegraph * * * company derived from the business done by it in this state." The Western Union Telegraph Company included in its report to the state board of assessments simply its

receipts from business transacted wholly within the state of Alabama. The board, however, required a report of receipts from all messages, whether carried wholly within or partly without the state. The supreme court of the state affirmed the action of the board of assessments, and the case was brought on a writ of error before the supreme court of the United States. Mr. Justice Miller, delivering the opinion (*Western Union Telegraph Co. v. Alabama*, 132 U. S., 472), said: "The question on which the jurisdiction of this court depends has been decided in this court so frequently of late years, several of the decisions having been made since the judgment of the supreme court of Alabama was delivered, that but little remains to be said in the present case except to show that it comes within the principle of the cases referred to. That principle is, in regard to telegraph companies which have accepted the provisions of the act of congress of July 24, 1866, sections 5263 to 5268 of the Revised Statutes of the United States, that they shall not be taxed by the authorities of a state for any messages or receipts arising from messages from points within the state to points without, or from points without the state to points within, but that such taxes may be levied upon all messages carried and delivered exclusively within the state. The foundation of this principle is that messages of the former class are elements of commerce between the states and not subject to legislative control of the states, while the latter class are elements of internal commerce solely within the limits and jurisdiction of the state, and therefore subject to its taxing power. The following cases in this court have fully developed and established this proposition: *Pensacola Telegraph Co. v. Western Union Telegraph Co.*, 96 U. S., 1; *Western Union Telegraph Co. v. Texas*, 105 U. S., 460; *Western Union Telegraph Co. v. Massachusetts*, 125 U. S., 530; *Ratterman v. Western Union Telegraph Co.*, 127 U. S., 411; *Leloup v. Port of Mobile*, 127 U. S., 640; *Fargo v. Michigan*, 121 U. S.,

230; *Philadelphia & S. S. Co. v. Pennsylvania*, 122 U. S., 326." Mr. Justice Miller then states the case and the conclusion of the supreme court of Alabama to the effect that the statute was valid in including all receipts from business done in the state, although the message may have been delivered at or may have been sent for delivery from some office out of the state. He then reviews the cases cited in the opening paragraph in the opinion, showing that all of them hold that no tax can be imposed upon messages or upon receipts derived from messages where the communication is carried either into the state from without, or from within the state to another state and concludes as follows: "We think these cases are so directly in point on the questions arising in the present case that they must control, and, as the record of the case presents the means by which the receipts arising from commerce wholly within the state, and from that which under these definitions may be called interstate commerce, can be separated, the judgment of the supreme court of Alabama is reversed." To my mind this case and those therein reviewed conclusively establish the proposition that the transmission of messages between points within the state and points without constitutes interstate commerce, in other words, business not within the state; and, by a parity of reasoning, that the business of transmitting messages between a city and points without such city is not business within the city.

The case of *Pacific Express Co. v. Seibert*, 44 Fed. Rep., 310, cited in the opinion of the court with approval upon another branch of the case, is, I think, equally conclusive. The facts of that case are stated in the opinion of the court. It was there said by Judge Caldwell: "The tax is imposed on the receipts for 'all sums earned or charged for the business done within this state.' These words qualify the whole act. They are plain and unambiguous. The words 'for the business done within the state' *ex vi termini* import business begun and ended in the state, and include

only intrastate commerce and not interstate commerce. The interjection of the intensifying words 'wholly' or 'entirely' would not alter their meaning or change their legal effect. Interstate commerce is not 'business done within' the state of Missouri. It is business done between two or more states. A package carried by the plaintiff from Omaha to St. Louis is not business done within the state of Nebraska, or the state of Missouri, but is business done between those two states. A contract for the carriage of goods from one state to another is an entire contract and is an interstate contract, and the carriage of goods under such contract is interstate commerce and is not 'business done within' any of the states from, through, and to which they are carried on such contract." That case went to the supreme court of the United States (142 U. S., 339), where it was affirmed. Mr. Justice Lamar said : " The opinion of the court below on this branch of the case is elaborately argued and is conclusive. We concur in the reasoning of it as well as in the language employed, and refer to it as a correct expression of the law upon the subject."

As stated repeatedly by the supreme court of the United States, the transmission of messages by telegraph is analogous to the transportation of goods by common carriers. The tax in the express company case was valid, because it extended only to goods transported wholly within the state of Missouri, and the case was distinguished from the cases already cited upon the ground that the business taxed lay wholly within the state. It is upon the same ground that the opinion of the court declares that this ordinance is not a burden upon interstate commerce, a conclusion in which I entirely concur; but for the very reason that the whole of the business must be transacted within the state in order to prevent the ordinance from being in violation of the federal constitution, I think that it should be wholly transacted within the city in order to be within the legislative grant.