## THE CITY OF TOPEKA V. GEORGE H. JONES.

### No. 14,739.   (86 Pac. 162.)

#### SYLLABUS BY THE COURT.

1. EXPRESS COMPANIES—*License Tax—City Ordinance Valid.* Under the provisions of section 134 of chapter 122, Laws of 1903, section 54 of ordinance No. 2384 of the city of Topeka is valid, and the license tax imposed by such ordinance upon express companies and agencies conducted, carried on or operated within the limits of the city may be collected from the owner or managing agent of such express company who conducts such business within the limits of the city.

2. ——— *Consignment to be Delivered within the City Not Essential.* The fact that an express company or agency does not receive packages from consignors within the city to be delivered for hire to consignees within the city does not relieve it from the payment of such license tax.

3. ——— *What Constitutes Business Conducted within the City.* The receiving of packages within the limits of the city from consignors, to be delivered by express to consignees without the city but within the state of Kansas, and collecting the charges therefor, or the receiving and delivering of packages sent by express through other express agencies in the state but out of the city, and delivering the same to consignees within the city and collecting the charges therefor, is conducting and carrying on an express agency within the limits of the city.

4. CRIMINAL LAW—*Failure to Pay License Tax—Penalty.* The owner or managing agent of such express agency who shall fail or refuse to pay such license tax on demand when due may be arrested and fined as provided by the ordinance of the city.

Appeal from Shawnee district court; ALSTON W. DANA, judge.   First opinion filed June 9, 1906.' Affirmed.   Rehearing allowed July 7, 1906.   Second opinion filed November 10, 1906.   Reaffirmed.

*Frank G. Drenning,* city attorney, and *W. C. Ralston,* assistant city attorney, for appellee.

*Eugene S. Quinton,* for appellant; *John T. O'Keefe,* and *A. B. Quinton,* of counsel.

The opinion of the court was delivered by

SMITH, J.: The appellant was arrested, tried and convicted in the police court of the city of Topeka for a violation of section 54 of ordinance No. 2384 of that city. He appealed to the district court of Shawnee county, where he was again convicted and fined. He now appeals to this court.

The authority of the city to levy and collect license taxes is found in section 134 of chapter 122, Laws of 1903, and the portion thereof applicable to this case reads as follows:

"The mayor and council may levy and collect a license tax upon and regulate any and all callings, trades, professions and occupations conducted, pursued, carried on or operated within the limits of such city, including . . . express companies and agencies."

Section 54 of ordinance No. 2384 of the city of Topeka is as follows:

"The sum of $100 per year on the business and occupation of express companies, corporations or agencies, in receiving packages in this city from persons in the city and transmitting the same by express from this city within this state to persons and places within this state, and receiving in this city packages by express transmitted within this state from persons and places in this state to persons within this city and delivering the same to persons in this city, excepting the receipt, transmission and delivery of any such packages to and from any department, agency or agent of the United States, and excepting the receipt, transmission and delivery of any such packages which are interstate commerce; the business and occupation of receiving, transmitting and delivering of the packages herein excepted is not taxed hereby."

The agreed statement of facts and the uncontroverted evidence show that the United States Express Company at the time charged had and maintained two offices in the city of Topeka; that Jones was the managing agent of the company in the city; that in the conduct of the express business of the company Jones re-

ceived packages in the city of Topeka to be forwarded to other express offices in other cities and towns of the state of Kansas, as well as to other such offices without the state; that he received packages sent by express from other towns and cities within the state and delivered the same to the consignee within the city of Topeka; and that he collected and received within the city the express charges for such business, but he neither received nor delivered any packages consigned within the city to consignees within the city. Also, that he had neglected and refused to pay the license tax required of express companies and agencies under section 54 of such ordinance.

Several assignments of error are made, but only one question is presented for our consideration, viz., Is the receiving and delivering of packages and the collection of express charges, as carried on by appellant, a "business," "calling" or "occupation" conducted, pursued, carried on or operated within the limits of the city of Topeka? It certainly cannot be regarded as a "profession" within the meaning of the statute. It probably would not be regarded as a trade, although this word, in approved usage, has many shades of meaning; as used in the old adage—"every man to his trade"— it is synonymous with "calling" or "occupation."

If appellant had been asked, "What is your calling?" or "What is your occupation?" it seems his only answer must have been, "I conduct an express agency." The statute quoted itself seems to define express companies and agencies as callings or occupations by including them in the class as callings or occupations. Indeed, it would be a strange use, or rather misuse, of language if an act of the legislature should authorize the imposition of a tax upon all horned cattle, including horses, or upon all draft animals, including poodle dogs. As in concrete numbers only things of the same kind can be added, so like things, not unlike things, are included in a class. If this be true, the meaning of the

Topeka v. Jones.

above statute and the ordinance enacted thereunder seems apparent.

The word "business" has, as used, different meanings. Webster's International Dictionary gives seven definitions of it, only two of which are possibly applicable to the use of the word in the statute and ordinance cited. They are: (1) "Any particular occupation or employment engaged in for livelihood or gain, as agriculture, trade, art, or a profession." (2) "Financial dealings; buying and selling; traffic in general; mercantile transactions." The appellant seems to contend that the latter, and the city that the former, of these meanings should be adopted in interpreting the statute and ordinance. As before remarked, the contention of the city seems to accord with the legislative intent. In no other sense of the word could the "business" of express companies and agencies be included in a calling, trade, profession or occupation, as the language is used in the statute. "Calling," "occupation," "trade" and "profession" are given by Webster as synonyms of "business." The words "business" in the ordinance and "businesses" in the statute are used with this meaning. The plural form of the word also supports this conclusion. Common usage also accords with it. Such taxes are usually called occupation taxes.

On the other hand it would be anomalous in both our state and national polity to tax "business" in the other sense contended for. Business in that sense is not regarded as requiring a license or as subject to taxation, unless it be a business of immoral or dangerous tendencies, which kind is licensed and taxed as a matter of police regulation.

Many authorities are cited, in cases relating to interstate commerce, that a state has no power to tax a business performed partly within one state and partly within another. In other words, although a state may tax intrastate business it cannot tax interstate business. The exclusive power is, by the constitution of the United States, delegated to congress to regulate

interstate commerce; and the power to tax is a power to interfere with—to regulate. Hence, if any state could tax a business conducted partly within its borders and partly within the borders of another state it would interfere with and encroach upon the power delegated to congress.

Commerce is "business" under the second definition given above. It relates to the commercial transaction more than to the calling or occupation, and any burden placed upon the income of commerce between the states by local authority, or any impediment to its freedom, is an entrenchment upon the power of congress.

License taxes are occupation taxes (*Fretwell v. City of Troy*, 18 Kan. 271) and are imposed by municipalities by authority of the legislature for the purpose of equalizing the burden of municipal expense. Many callings—as, for instance, express agencies—enjoy police protection and all of the very numerous advantages of municipal expenditures without necessarily exposing any or very little property to taxation. As was said by this court in *City of Newton v. Atchison*, 31 Kan. 151, 1 Pac. 288, 47 Am. Rep. 486:

"There is no inherent vice in the taxation of avocations. On the contrary, business is as legitimate an object of the taxing power as property. Oftentimes a tax on the former results in a more even and exact justice than one on the latter. Indeed, the taxing power is not limited to either property or avocations. It may, as was in fact done during the late war and the years immediately succeeding, be cast upon incomes, or placed upon deeds and other instruments. We know there is quite a prejudice against occupation taxes. It is thought to be really double taxation. Judge Dillon well says that 'such taxes are apt to be inequitable, and the principle not free from danger of great abuse.' Yet, wisely imposed, they will go far toward equalizing public burdens. A lawyer and a merchant may, out of their respective avocations, obtain the same income. Each receives the same protection and enjoys the same benefits of society and government. Yet the one having tangible property pays taxes; the other, whose property is all in legal learning

and skill, wholly intangible, pays nothing.  A wisely-adjusted occupation tax equalizes these inequalities. But after all, these are questions ·of policy, and for legislative consideration.  It is enough for the courts that both occupation and property are legitimate objects of taxation; that they are essentially dissimilar; that constitutional provisions regulating the taxation of one do not control that of the other; and that there are no constitutional inhibitions on the taxation of business, either by the legislature directly, or by municipal corporations thereto empowered by the legislature.  *Second.*  There is no inhibition, express or implied, in our constitution, on the power of the legislature to levy and collect license taxes, or to delegate like power to mu-' nicipal corporations." (Page 154.)

The business of but a small relative proportion of the vocations upon which the municipalities of the state impose an occupation tax, under the authority of our statutes, is confined exclusively within the limits of the city which imposes the·tax.  Three-fourths of the business of the lawyer who pays a license tax in Topeka may be in other cities of the state or in other states.  Yet the lawyer follows his vocation within the limits of the city.  A corporation might be engaged in wholesaling merchandise, and might have many branch houses in different cities in the state, and might even so conduct its business that its sales of goods would legally be held to be made at the numerous other places of business of its customers, so that very little of its business could be said to be done within the limits of any city in which it has a wholesale house in the sense that commerce must be intrastate to become the subject of local taxation, yet it would not be contended that one of its branch houses located in Topeka, or any other city of the first class, would not be subject to an occupation tax under an ordinance and the statutes above quoted.

The reason for the refinement between interstate commerce and intrastate commerce in the decisions maintaining the power of congress to control interstate commerce does not obtain in determining what vocations are intracity under the statute.  It is' just

and equitable that the express agency in question should, with many other vocations, bear some portion of the municipal expenses, which are incurred for their benefit as well as for the benefit of the property owners, and it is not equitable that such expenses should be borne by property owners alone. The finding of fact involved in the conviction that the appellant was conducting a business and engaged in a vocation within the limits of the city which is subject to a license tax will not be disturbed. (*Western Union Telegraph Co. v. City of Fremont*, 39 Neb. 692, 58 N. W. 415, 26 L. R. A. 698; *Sacramento v. Stage Company*, 12 Cal. 134.)

There is no contention, if the license tax is legal, that the appellant, as the business manager, is not responsible for its payment or that he may not be arrested and fined for his refusal to pay the same.

The judgment of the district court is affirmed.

GREENE, MASON, PORTER, GRAVES, JJ., concurring.

BURCH, J. (dissenting) : The first question is, Where does the burden of the tax in question rest? The ordinance is plain to the effect that the business of those common carriers of goods known as express companies is to be charged. Individuals are not named. If the general offices of the United States Express Company were in the city its officers, agents and employees would not, under the ordinance, be taxed by the head as being engaged in the calling or occupation of expressing goods. The business of the company is to bear the burden of the license; who pays it or how collection of it is to be enforced is incidental.

What, then, is the business of the express company? It is not a warehouse company for receiving and holding goods to be transported. Nor is it a transfer or drayage company for the delivery within the city limits of packages coming to it from outside points. It receives for transmission and transports goods to points outside the city, and then delivers them to the consignees; and it receives for carriage and carries into the city from points beyond the corporate bounda-

Topeka v. Jones.

ries goods delivered to it for that purpose, and puts them into the possession of the consignees. Receipt, carriage and delivery, whether the process begins or ends inside the city, are not separate and independent occupations of the company. They are consecutive steps—integral parts—of the single business of carrying express matter between the city and outside points. A tax upon the receipt of goods is a tax upon their delivery, and *vice versa*, because receipt, carriage and delivery are merely stages of the same business.

Authority to tax this business must be found in some statute or it does not exist, and the authority granted must be as extensive as the ordinance providing for the tax or the ordinance is invalid. The statute provides for a tax upon those businesses only which are conducted "within the limits of such city." (Laws 1903, ch. 122, § 134.) The word "within" cannot be intensified. Nothing would be added to its meaning by saying "wholly" or "entirely" within the corporate limits. If the first and last acts inherently necessary to be performed in the carriage of a parcel of express matter occur in different cities, the transaction is not one occurring within the limits of either of them. There is no distinction whatever in this respect between the boundary-lines of cities and the boundary-lines of states. Kansas City, Kan., and Kansas City, Mo., have a common boundary—the state line. Express business between them is business between states. It cannot be conducted within the limits of either state because it cannot be conducted within the limits of either city. If both cities were in Kansas the character of the business would be the same, and the impossibility of conducting it within the limits of either would put it beyond the jurisdiction of both. This palpable physical fact cannot be evaded.

The distinctions between interstate and intrastate commerce made in the decisions of the supreme court of the United States are not refinements, and cannot be belittled by calling them such. They fix impassable barriers against the encroachments of sovereignties.

Those decisions are precisely applicable to the facts of this controversy, for the jurisdiction of a city can no more extend beyond its corporate limits than can the jurisdiction of a state.

The argument based upon a consideration of three-fourths of the business of a Topeka lawyer fails for lack of discrimination. If, like the express company, every transaction the lawyer undertook indispensably required the performance of constituent acts outside the city in order to complete it, his business could not be taxed. The same is true of wholesale houses and their branches. But, because lawyers and wholesale dealers are occupied with business that both begins and ends entirely within the city, they may be taxed. Many words could not make the foregoing proposition plainer.

The reasoning of Irwin, C., in his dissent from the opinion in *Western Union Telegraph Co. v. City of Fremont,* 39 Neb. 692, 58 N. W. 415, 26 L. R. A. 698, destroys the authority of that case, and his strictures upon the case of *Sacramento v. Stage Company,* 12 Cal. 134, are sound.

The observation that it is just and equitable that the express company should bear some portion of the expenses of the city of Topeka was not, in my opinion, due from this court. That is a legislative, and not a judicial, question.

I think the judgment of the district court should be reversed and the complaint against the defendant be quashed, and I am authorized to say that Mr. Chief Justice Johnston concurs in this opinion.

---

OPINION ON REHEARING.

*Per Curiam:* After listening to the oral arguments made and after a careful consideration of the briefs filed on the rehearing of this case the position of the members of the court is not changed. The majority adhere to the opinion filed and the dissenting justices adhere to their dissent.