CITY OF ELDORADO SPRINGS v. F. J. HIGHFILL, Appellant.

**Division Two, July 5, 1916.**

1. **INTERSTATE COMMERCE:** Definition: Police Regulation. Interstate commerce includes intercourse, and cannot be confined to traffic alone. It embraces intercourse between persons, firms or corporations of different states; and importation is not only an indispensable element, but the test of interstate commerce. But the Federal statute regulating interstate commerce will not be construed to interfere with the power of the State to fully regulate its police and taxing powers and domestic trade unless the State statute conflicts with the plain provisions thereof.

2. ————: Sales by Samples: Canvasser: Interruption in Interstate Character. But shipments from outside the State to a canvasser, who sells goods upon order, which of itself gives to them an interstate character, will not alone suffice to relieve the canvasser from the burden of a State license, un-

less the interstate character of the transaction continues up to and includes the sales to purchasers. If the interstate character of the shipments ceases upon the delivery of the goods by the foreign corporation to the canvasser, the goods do not thereafter move in interstate commerce, but the movement becomes local in its nature upon such delivery to him.

3. ———: ———: ———: ———: **Facts of Case.** Defendant went from house to house in a city in this State, carrying samples of wares, exhibiting them to prospective purchasers, who agreed to buy from him goods similar to the samples and to pay for them upon delivery after satisfactory examination. Orders for wares, made by defendant, were directed to the manufacturing company in another state, sufficient to meet the requirements of the prospective sales. In no case did he furnish the company the names of the particular purchasers, but before making the orders he had furnished the company with letters of credit to cover the cash amount of the particular order. The goods were billed and shipped to defendant in bulk and he paid the freight charges, and upon receipt he sorted and delivered them in accordance with the conditional sales theretofore made, and if the goods were accepted he received payment therefor from the purchasers. He had an agreement with the company that he might return at its expense to a certain amount on any order goods not taken by persons to whom contracted and who declined to receive them. *Held*, that the goods became defendant's property when they were delivered to him, and upon such delivery their movement lost its character as interstate commerce, and thereafter became local in it nature, and defendant was subject to a fine for selling them without first having obtained from the city a license as a "canvasser or agent taking orders or selling goods to customers, by canvassing or going about from house to house." [Distinguishing Fleming v. Mexico, 262 Mo. 432; Jewel Tea Co. v. Carthage, 257 Mo. 383; and Kansas City v. McDonald, 175 S. W. 917.]

4. ———: ———: ———: **Rebates.** The contract by the canvasser for rebates from the foreign company in the event of his failure to consummate the sale of wares for which he canvassed from house to house and obtained conditional contracts of sale, does not add to nor serve to continue the interstate character of the shipment after the movement of the goods in interstate commerce had been broken by delivery to him.

5. **CANVASSER: License: Merchant or Peddler: Engaging in Business: Validity of Ordinance.** Sec. 9399, R. S. 1909, empowering cities of the fourth class "to regulate and license all business, trades and avocations whatever," authorizes such

cities by ordinance to prohibit "any person, firm or corporation from carrying on or engaging in any business in said city without having obtained and paid for a license," which includes a canvasser who goes from house to house soliciting and taking orders for goods by sample, since that is carrying on and engaging in a business, and therefore it is immaterial whether a canvasser be considered a merchant or a peddler.

6. ————: No Specific Use of Word in Statute:   General Words. Simply because the word "canvasser" is not used in the statute, it will not be held that the city is powerless to tax "canvassers" engaged in canvassing from house to house for orders for goods to be delivered upon conditional sale. While general words used in a statute are to be limited in their meaning to the particular words preceding them, and while, strictly speaking canvassers may not be *ejusdem generis* with merchants and peddlers, they are sufficiently so within the meaning of a statute authorizing the city to "regulate and license all business, trades and avocations," even though it does not use the word "canvasser."

7. MISDEMEANOR: Charge in Words of Statute:   Synonym. Charging a misdemeanor in the substantial lan⸗uage of the statute is sufficient. Nor is the complaint insufficient because a synonym of the statutory words is used instead of the words themselves.

Appeal from Cedar Circuit Court.—*Hon. B. G. Thurman,* Judge.

AFFIRMED.

*Charles E. Gilbert* and *J. F. Rhodes* for appellant.

(1)   A sale in this State of goods which are in another state at the time of said sale, is interstate commerce, and no license is or can be required for making such sale, being violative of section 8 of article 1 of the Constitution of the United States. State v. Looney, 214 Mo. 216; State v. Emert, 103 Mo. 245; Hynes v. Briggs, 41 Fed. 469; Robbins v. Taxing District, 120 U. S. 489; Brown v. Houston, 114 U. S. 622; Welton v. State of Missouri, 91 U. S. 275; Woodruff v. Parhan, 8 Wall. 123; Cook v.

Pennsylvania, 97 U. S. 566; Emert v. Missouri, 156 U. S. 296; Dozier v. State, 218 U. S. 123; Brookfield v. Kitchen, 163 Mo. 546; State v. Hoffman, 50 Mo. App. 585. (2) The plaintiff city has no power to license, tax and regulate any business or occupation unless specific authority is granted to it to do so by the Legislature and Sec. 9399, R. S. 1909, governing cities of the fourth class does not give said city any authority to assess a tax against a "canvasser or agent taking orders or selling goods to customers by canvassing or going about from house to house" and that part of said ordinance is null and void. Independence v. Cleveland, 167 Mo. 384; Knox City v. Thompson, 19 Mo. App. 523; Hannibal v. Price, 29 Mo. App. 280; Dillon on Mun. Corporations (1 Ed.), sec. 55; St. Louis v. Laughlin, 49 Mo. 599; Grumley v. Webb, 44 Mo. 444; St. Louis v. Herthel, 88 Mo. 128; Constitution of Missouri, sec. 3, art. 10; Kansas City v. Grush, 151 Mo. 128; St. Louis v. Spiegel, 60 Mo. 587. (3) The defendant is not a peddler. Sec. 10282, R. S. 1909; Trenton v. Clayton, 50 Mo. App. 535; 1 Dillon on Mun. Corp. (4 Ed.), sec. 89.

*R. N. Banister* for respondent.

(1) If the judgment on the circuit may be sustained on any theory of the law applicable to the facts, on either count of the complaint, it must stand. Rinard v. Railroad, 164 Mo. 270; Hess v. Ganz, 90 Mo. App. 439. (2) Respondent being a city of the fourth class had the power and authority under its charter (Sec. 9399, R. S. 1909) "to license, and to levy and collect a license tax on . . . hawkers, peddlers, . . . merchants of all kinds, . . . and all other business, trades and avocations whatever." (a) Appellant and his business at El Dorado Springs bring him within the designation "merchants

of all kinds." Kansas City v. Lorber, 64 Mo. App. 608; Kinney's Law Dict. & Glos. 459; Anderson's Law Dict. 671; 20 Am. & Eng. Ency. (2 Ed.), p. 579. (b) But if appellant was not a merchant of any kind, and his business not that of a dealer in merchandise, it certainly was *ejusdem generis* with that of dealing, buying and selling merchandise, and that will suffice under the all-embracing clause "all other business, trades and avocations whatever." Kansas City v. Lorber, 64 Mo. App. 608; Kansas City v. Vinquist, 36 Mo. App. 584; Brookfield v. Kitchen, 163 Mo. 551; St. Louis v. Woodruff, 71 Mo. 92; St. Louis v. Herthel, 88 Mo. 128; Connor v. Carterville, 125 S. W. 861. (3) Appellant, in his transactions at respondent city, was not engaged in interstate commerce, and he cannot hide behind the Aegis of the Federal Constitution under any yet construction and application of section 8, article 1, of that instrument. He was not the agent of the Pennsylvania company in his dealings with his customers. The very latest cases in this court in point are these of Jewel Tea Co. v. Carthage, 257 Mo. 383, and Fleming v. Mexico, 171 S. W. 321, and under the standards there set up appellant does not fill the measure.

WALKER, J.——This suit was brought in the mayor's court of El Dorado Springs, charging defendant with violating an ordinance of said city in engaging in the business of a canvasser or agent by taking orders or selling goods to customers without taking out a license authorizing him so to do. He was convicted as charged and his punishment assessed at a fine of $20. He appealed to the circuit court of Cedar County, where the judgment below was affirmed. He thereupon perfected an appeal to the Springfield Court of Appeals and filed therein an application for a transfer of the cause to the Supreme

Court on the grounds (1) that a Federal question was involved necessitating a construction of the United States Constitution; and (2) that a construction of the State Constitution was also necessary to a determination of his rights. The application was granted and the case transferred to this court.

The material parts of the ordinance in question are as follows:

"Section 1. There is hereby levied a license tax upon the various business, trades, callings, occupations, objects and persons in the city of El Dorado Springs, Missouri, hereinafter named, and the same shall be licensed and regulated as hereinafter provided. . . .

"Canvassers or agents taking orders or selling goods to customers, by canvassing or going about from house to house. . . . $20.00 per year.

. . .

"Peddlers . . . $1.00 per day or $15.00 per month. . . .

"Section 2. Any person, or firm or corporation who shall carry on or engage in any trade, business or occupation or calling in this city, herein required to be licensed, without first having obtained and paid for said license, or shall fail, neglect or refuse to comply with any other provision of this ordinance, shall be deemed guilty of a misdemeanor, and upon conviction shall be fined in any sum not less than five dollars nor more than one hundred dollars."

The formal sufficiency of the complaint charging defendant with a violation of this ordinance is not questioned. The defendant at the time of his arrest was going from house to house carrying samples of aluminum wares for kitchen and cooking purposes, exhibiting same to prospective purchasers, many of whom agreed to buy from him wares similar to the samples and to pay for same upon delivery after

satisfactory examination. Two separate orders for goods of the kind agreed to be purchased were made by the defendant. One was directly to the manufacturing company of the wares at a point in Pennsylvania and the other to a branch establishment of the same company in East St. Louis, Illinois. Each of these orders directed the company addressed to send to defendant a quantity of their wares sufficient in each case to meet the requirements of the prospective sales he had made. In no case did he furnish the manufacturing company with the names of particular purchasers of any of the wares ordered. Before making these orders he had in each case furnished the company with letters of credit to cover the cash amount of the particular order. The goods in each order were billed and shipped to defendant in bulk and he paid the freight charges thereon. Upon their receipt he sorted and delivered them in accordance with the conditional orders theretofore made, and if the goods were accepted they were paid for by the purchasers. He had an agreement with the manufacturing company that he might return at its expense goods on any order to the amount of $20 not taken by any one person to whom he had contracted to sell them and who had declined to receive same, and for goods so returned he was to be credited at the wholesale price of such articles.

I. Defendant's contention is that he was, as the agent of the manufacturing company, engaged in interstate commerce and hence not amenable to the license laws of this State nor to municipal ordinances. To sustain this contention he cites Fleming v. Mexico, 262 Mo. 432; Jewel Tea Co. v. Carthage, 257 Mo. 383; and Kansas City v. McDonald, 175 S. W. (Mo.) 917.

A comparison, or if there be differences, a contrast, of the facts in these cases with those in the in-

stant case will enable it to be determined whether they may with propriety be cited as sustaining defendant's contention. Preliminary to this review it is well to understand what is meant by "interstate commerce" as applied to this case.

The judicial meaning of the term "commerce" as first definitely declared in Gibbons v. Ogden, 9 Wheat. 1, is that it is not traffic alone, but "it is intercourse." Comprehensively speaking, it describes the intercourse between nations, but here it is confined to the intercourse between persons, firms or corporations of the different States.

"Importation," says SANBORN, J., in Butler Bros. Shoe Co. v. United States Rubber Co., 156 Fed. (C. C. A.) 1, "is the indispensable element, the test, of interstate commerce." Generally speaking, therefore, wherever there is a negotiation, contract, trade or dealing between persons of different states in which importation is an essential feature or forms a component part of the transaction it may be denominated "interstate commerce." [Text Book Co. v. Pigg, 217 U. S. 91, 54 L. Ed. 678.]

Necessarily there are limitations upon this definition due to differences in the facts in particular cases. In no case has it been held that the act of Congress regulating interstate commerce is to be so construed as to interfere with the power of a State to fully regulate its police and taxing powers and its domestic trade, provided, of course, the State act does not conflict with the plain provisions of the Federal statute. Cases seeming to hold to the contrary will be found upon analysis to contain other controlling facts governing the court's conclusion and not merely an interference with the powers named.

The term here involved and necessary to a determination of this case having been defined, a review of the rulings of this court thereon is in order.

In Fleming v. Mexico, supra, an agent of a foreign corporation went from house to house soliciting orders for his company from residents of the city of Mexico for coffees, teas and groceries, and forwarded such orders to the company in another state to be filled. The company filled them, making up a separate package for each order, and sent them to the agent, who delivered them in unbroken packages to the different buyers and received the money therefor, which he transmitted to his principal.

In Jewel Tea Co. v. Carthage, supra, an agent of a Chicago firm took orders for teas, coffees, etc., from residents of the city of Carthage. These orders were mailed by the agent to his principal in Chicago, where each article ordered was separately wrapped and the packages placed in a box and shipped to the agent, who, upon receipt of same, delivered them, thus separately wrapped, to the purchasers and received the money therefor, which he forwarded to his principal.

In Kansas City v. McDonald, supra, a packing company in Indiana sold its products in Kansas City, Missouri, through a solicitor or agent by having him take orders for same. These orders were forwarded by the agent to the company to be filled and his participation in the matter ended. If the orders were filled the goods were shipped direct to the buyers and the collections were made of them by the company. The agent, finding that the business was more than he could personally transact, organized a force of men to solicit for the company who reported to him, but forwarded all orders to the company at Indianapolis as having been made by the agent, and the goods were shipped and collections made as before. The force of men thus employed increasing in numbers, he opened an office in Kansas City where they reported to him and received instructions and directions

before entering upon their work. The compensation of the agent and the men employed by him was paid by the Indiana company. The goods were sold by sample, and the orders sent in by the agents to the company were subject to acceptance or rejection as it might determine. Instances occurred in which the agents went to local retail dealers and took orders for goods of the Indiana company, using samples of the goods sought to be sold to secure the order, and after the order was secured the solicitor would ask the retailer with which wholesaler or jobber he would like to have the order placed, and the same would be placed as requested. Each of the foregoing cases was held to present transactions interstate in character and hence not subject to local regulation.

In the instant case the defendant solicited persons to buy the goods, but no sales were made to the persons solicited until he had paid for the goods or had given a guaranty for their payment and the same had been shipped to him, whereupon he sold them to the persons he had theretofore solicited if the goods were found by such persons to be satisfactory. The difference between these cases is readily distinguishable. In the Fleming and Jewel Tea Company cases the contracts for the purchases became binding when the orders for the goods were received and accepted by the respective corporations in other states, and the transactions became interstate in their character upon the shipment of the goods. In the Kansas City case the transactions constituted sales by samples and the nature of same became interstate upon the shipment of the goods as in the Fleming and Jewel Tea Company cases. The court held that the occasional solicitation of sales to retailers by the agents, being without compensation, or mere gratuities, did not change the general nature of the transactions.

There is marked similarity between the cases reviewed and the instant case, in that all of the shipments were from outside of the State, and hence interstate in their character. This will not suffice, however, to free persons dealing in goods contained in these shipments from State license laws unless the interstate character of the transactions continues up to and includes the sales to purchasers, thus rendering the agents who made the sales a part of same.

This was the condition in the cases we have reviewed. In the instant case, however, the interstate character of the shipments ceased upon the delivery of the goods by the foreign corporation to the defendant, and the goods thereafter not moving in interstate commerce, the transactions became local in their nature.

There is evidence that the defendant was the agent of the foreign company. The testimony in this regard consists of declarations. This will not suffice to define defendant's relation. His status is fixed by the facts. In each instance the payment of the purchase price was guaranteed by the defendant when the goods were ordered. They therefore became his property upon their delivery to him. We find no semblance of agency here, but all the characteristics of an independant transaction in which the defendant was one of the principals. His attempted ascertainment before each order as to who would purchase from him and his limiting his orders to these prospective buyers does not militate against this conclusion. It is not unusual for independent traders to limit their purchases from jobbers or wholesalers to the demands of their patrons, and he is fortunate in trade who is able to determine the extent of these demands beforehand.

Nor does defendant's contract for rebates from the company in the event of his failure to sell any

of the articles indicate an agency as an aider to the theory of the interstate character of the shipments and as a consequence the immunity of the goods sold from local regulation. If defendant had not purchased the goods the property in same would have remained in the company and the provision as to a rebate would not only have been unnecessary but meaningless.

II. The ordinance upon which this proceeding is based is authorized by the statute (Sec. 9399, R. S. 1909) empowering the mayor and board of aldermen of cities of the fourth class, to which El Dorado Springs belongs, "to regulate. and to license . . . all . . . business, trades and avocations whatever." This general power follows a specific enumeration of the callings to be regulated and licensed. The ordinance prohibits "any person, firm or corporation from carrying on or engaging in any business in said city without having obtained and paid for a license." Defendant was charged as having engaged in business as a canvasser or agent. We have shown that he did not belong to the latter class. As a canvasser he solicited orders for the sale of goods, taking with him samples of same, and subsequently sold and delivered such goods to the purchasers. Whether the word canvasser, therefore, is synonymous with that of merchant or peddler is immaterial; it partakes much of the nature of both, and the law is not concerned with the mere niceties of words if those used clearly come within the meaning of the prohibitions of the statute, as is the case here, especially when the offense charged is a misdemeanor. Charging a misdemeanor in the substantial language of the statute· is sufficient. [State v. Taylor, 167 Mo. App. 104.] This was done in the instant case, but the contention

*Validity of Ordinance.*

is that the charge is insufficient because a synonym of the words used in the statute was employed instead of the words themselves. This is a mere refinement of a technicality and is without merit.

If it be further contended that the general power to tax and regulate granted by the statute following a specific enumeration of the extent of same is to be limited to the rule usually applicable in such cases, viz., that the general words are to be limited in their meaning to the particular words preceding them, it will be sufficient to say that while canvassers may not, strickly speaking, be *ejusdem generis* with merchants or peddlers, they are sufficiently so within the meaning of the statute here under consideration to form an exception to the general rule. This is especially so when we take into consideration the character of the legislation manifest in the statute and ordinances in this case, viz., the exercise of the city's police power. As was said by this court in St. Louis v. Herthel, 88 Mo. 1. c. 130, the rule of interpretation "is not to be so applied that the city is to be held powerless to tax any calling not expressly named in its charter by its proper name." This ruling authorized the licensing of "architects," not then enumerated in the statute as one of the callings to be regulated.

St. Louis v. Woodruff, 71 Mo. 92; Kansas City v. Vindquest, 36 Mo. App. 584; and Wonner v. Carterville, 142 Mo. App. 120, afford illustrations of like exceptions to the general rule in the construction of ordinances similar to the one here in question.

In the cases of Independence v. Cleveland, 167 Mo. 384, and Kansas City v. Grush, 151 Mo. 128, there was no authority in the charters or ordinances of the municipalities to regulate and license the vocations therein named and the facts were different from those

in the case at bar; these cases, therefore, cannot be cited as controlling authorities here.

While it would have restricted the field of technical criticism if the ordinance had employed the terms of the statute, its conformity therewith is sufficient to require the defendant to comply with same.

In view of what has been said the judgment should be affirmed and it is so ordered. All concur.