EX PARTE MAX ASOTSKY, Petitioner.—5 S. W. (2d) 22.

Court en Banc, April 9, 1928.

*Walsh & Aylward, A. A. Ridge* and *James P. Aylward* for petitioner.

814

*John T. Barker* and *E. F. Halstead* for respondents.

BLAIR, J.—This is an original proceeding under the Habeas Corpus Act. Petitioner, a retail cigarette merchant of Kansas City, was arrested by and in the custody of the chief of police of said city, charged with violating an ordinance of said city requiring the payment of an occupation tax of twenty per cent of the retail sales price of each package of cigarettes "sold, offered or displayed for sale within the city." Contending that said ordinance is invalid and that his arrest and imprisonment for the alleged violation thereof is unauthorized and illegal, petitioner filed in this court his petition for our writ of habeas corpus.

Our writ was ordered issued. Thereupon its formal issuance and service were waived. Production before this court of the body of petitioner has likewise been waived and petitioner was released from custody pending the final determination of the case. Thereafter return of respondents and answer of petitioner, admitting the facts, but challenging the validity of the ordinance, were filed. The case was argued and submitted at the October Term of this court.

Petitioner is a druggist in Kansas City and, among other things, sells cigarettes in packages at retail. On August 2, 1927, an information was filed in the municipal court of Kansas City charging that petitioner displayed, offered for sale and sold at retail for fifteen cents to a person named one package of cigarettes "without first paying to Kansas City any occupation tax therefor, and without first affixing to said package of cigarettes a stamp or stamps purchased from or furnished by the Commissioner of Licenses of Kansas City, Missouri, evidencing the payment to Kansas City of said occupation tax thereon, all in violation of Ordinance of Kansas City, Missouri, No. 38141, approved July 1, 1920, as amended by Ordinance No. 54356, passed April 11, 1927."

No contention is made that petitioner did not violate the terms of said ordinance. He was lawfully arrested and taken into custody therefor and was being properly prosecuted thereunder, if said or-

dinance is a valid ordinance. Sections 3-H, 3-I, 3-J and 3-K of said ordinance are as follows:

"Section 3-H. Every person, firm or corporation engaged in the retail business of selling cigarettes or offering or displaying the same for sale within the city, shall procure a license therefor, and at the time such license is issued, shall pay to the Commissioner of Licenses, the sum of one dollar as a registration fee, and in addition thereto, every such person, firm or corporation, engaged in said business, shall pay an occupation tax in an amount equal to twenty per cent of the retail sales price (exclusive of tax) of each package of cigarettes so sold, offered or displayed for sale within the city, said tax shall be paid and the stamps hereinafter provided for affixed by the person, firm or corporation selling such cigarettes or displaying or offering the same for sale after the same shall have come to rest in this city and before being displayed or offered for sale by such retailer in this city; provided nothing in this ordinance shall be construed to require a distributor or dealer to fix the retail price, or construed to require any retailer to sell at any particular price, but the amount of stamps affixed at time of sale shall in no event be less than twenty per cent of the price at which the retail sale is made.

"Section 3-I. The tax provided by Section 3-H of this ordinance shall be paid by purchase from the Commissioner of Licenses of stamps of such design and denomination as may be prescribed by the Director of Finance. In the sale of said stamps the Commissioner of Licenses shall allow a discount of ten per cent of the denomination or face value thereof. It shall be the duty of every person, firm or corporation selling, offering or displaying for sale, at retail, any package of cigarettes, to affix to each package of cigarettes, so sold, offered or displayed for sale, a stamp or stamps so purchased from and furnished by the Commissioner of Licenses, and which stamps so affixed shall evidence the payment of the tax imposed by this ordinance; and such stamps shall be cancelled so soon as they shall be affixed to the package containing such cigarettes and no stamps of less fractional denominations than one-half of one cent shall be so affixed. For the purpose of this ordinance every sale and delivery of cigarettes within the city, other than sales to retail dealers in cigarettes within the city licensed under this ordinance as such, shall be deemed a retail sale.

"Section 3-J. No person, firm or corporation shall sell or offer for sale, or display for sale, at retail, any cigarettes without first having affixed to the package thereof the stamp or stamps required to be affixed thereto under the provisions of this ordinance, nor sell or offer for sale or display for sale cigarettes at a greater price than that upon which the affixed and cancelled stamps denote the retail price to be; nor shall any person, firm or corporation falsely and

fraudulently make, forge, alter or counterfeit any stamp or stamps prescribed by the Director of Finance under the provisions of this ordinance, or cause or procure to be falsely or fraudulently made, forged, altered or counterfeited, any such stamp or stamps, or knowingly and willfully utter, publish, pass or tender as true, any false, altered, forged or counterfeited stamp or stamps.

"Section 3-K. Any person, firm or corporation who, at the time this section takes effect, shall be engaged in the business of selling cigarettes or offering or displaying the same for sale, at retail, under an unexpired cigarette dealer's license, shall be entitled to receive credit upon purchase of stamps required by this ordinance, in an amount to be determined as follows:

"The total amount of the prepaid cost of said unexpired retail cigarette dealer's license shall be prorated between the expired and unexpired prepaid term of said license as at the effective date of this section; and the amount so prorated to the unexpired prepaid term shall be credited upon purchases of stamps."

By Section 13 of said ordinance violation of the ordinance is declared to be a misdemeanor, and it is provided that a fine not less than $100 nor more than $500 may be imposed for each and every offense.

Several paragraphs of petitioner's Points and Authorities challenge the validity of the cigarette tax here involved because of the provision that a ten per cent discount shall be allowed by the Commissioner of Licenses in the sale of stamps. It is said that "an ordinance levying a twenty per cent stamp tax on cigarettes sold in packages, and allowing retail dealers in Kansas City a ten per cent discount on each stamp purchased by them from the city, and to exact and receive from the consumer thereof the entire twenty per cent and make a ten per cent profit for themselves on such stamps out of the public funds, authorized to be collected from and paid by the consumer of such cigarettes, is unconstitutional, null and void, because the tax thereby attempted to be levied is not wholly and exclusively laid for public purposes."

The ordinance is not reasonably subject to this objection. The provision for the purchase by the dealer of stamps representing twenty per cent of the retail price at a discount of ten per cent is in effect a tax of eighteen per cent instead of twenty per cent. No stamps are sold at one hundred per cent of their face value to any one. There is nothing requiring the dealer to sell cigarettes at any stated price. All of the eighteen per cent tax is paid to the city and finds its way into its treasury where it is used for public purposes, as distinguished from private purposes. The requirement that stamps, representing twenty per cent of the retail price less ten per cent, be purchased is nothing more or less than an unnecessarily roundabout way of imposing an eighteen per cent tax on sales of cigarettes.

Section 3, Article X, of the Constitution, providing that "taxes may be levied and collected for public purposes only," is not violated by the ordinance. The cases cited by petitioner well illustrate the meaning of this provision, but have no bearing upon the question before us. They all deal with the use of public money after it has been collected by the taxing authority.

If the ordinance required the dealer to collect twenty per cent of the retail price from the purchaser of the cigarettes in packages and then gave the dealer ten per cent of the money so collected, or required the purchaser of a package of cigarettes to buy from the dealer, attach to the package and cancel a stamp and to pay therefor the full face value of the stamp, a different situation would arise. But since the dealer is not required to collect the tax from the purchaser and the rate he pays for the stamps is eighteen per cent of the retail price, whether the purchaser ultimately pays it or the dealer absorbs it, no public money is paid to or retained by the dealer.

Petitioner urges a number of objections to the ordinance, all based upon the proposition that the dealer is allowed to profit to the extent of ten per cent of the face value of each stamp purchased and attached to a cigarette package. It is said that this constitutes an unjust and arbitrary discrimination between cigarette dealers and other merchants; that Sections 1 and 10 of Article X are violated because taxes can only be collected and disbursed for public purposes by public officers; that the dealer is given the right to collect the tax from the consumer and to appropriate ten per cent thereof for his own use, etc.

All these contentions are based upon the assertion that the dealer collects the full face value of the stamps and only pays ninety per cent of such face value to the city. Since we are satisfied that the basic contention is unsound, we need not go through the various contentions separately. If we are correct that the tax imposed is in fact only eighteen per cent of the retail price, the contentions, founded upon the proposition that the dealer is allowed to collect and retain ten per cent of the tax, are all wanting in merit. They are all answered by the considerations which caused us to rule adversely to petitioner the contention that the ten per cent discount did not amount to the taking and using of public funds for other than public purposes.

Petitioner insists that "the ordinance in question is void because the charter of Kansas City does not authorize the City Council thereof to classify or tax cigarettes as a class and there is no provision therein governing the same."

Article 1, section 1, paragraph 57, of the charter of Kansas City for 1925, authorizes the council "to license, tax and regulate any

and every person, firm, association or corporation in any wise engaged in the occupation, business, trade, pursuit, profession, calling, employment, vocation, avocation, or practice of . . . dealer or distributor of goods, wares or merchandise; . . . merchant; . . . and in the exercise of the foregoing powers to divide any one or more of the various occupations, businesses, trades, pursuits, professions, callings, employments, vocations, avocations, corporations, institutions, establishments, articles, utilities and commodities into different classes.''

Section 8702, Revised Statutes 1919, provides that no. municipal corporation shall have power to impose a license tax upon any business, etc., unless such business is specially made taxable in its charter or authorized by statute. The charter of Kansas City authorizes it to license, tax and regulate any person, etc., engaged in the business of dealer or distributor of goods, wares or merchandise or any merchant. Under authority of the charter provisions quoted, the city may divide merchants into different classes.

We think the decision of this Court en Banc in Viquesney v. Kansas City, 305 Mo. 488, 266 S. W. 700, settles this contention adversely to petitioner. There a tax of one cent was imposed on each gallon of gasoline sold. One engaged in selling gasoline was held to be a merchant within the meaning of the 1908 charter and that the tax upon such sales did not violate Section 8702, Revised Statutes 1919. Levying a license or occupation tax upon sales of cigarettes is manifestly as much justified when measured by Section 8702, Revised Statutes 1919, and Article I, section 1, paragraph 57 of the 1925 charter, as was the tax upon sales of gasoline under the 1908 charter and the same section of the statute.

Petitioner relies on Kansas City v. Grush, 151 Mo. 128, 52 S. W. 286. It was there held that the city had no power to license *eo nomine* a produce dealer engaged in the business of buying and selling potatoes, apples, etc. The city only had power to license, etc., merchants as a class. Respondents have pointed out that the charter in force when that ordinance was passed did not authorize the city to divide the occupations, businesses, etc., into different classes, and hence the Grush case is not controlling.

Petitioner cites the very late case of Siemens v. Shreeve, 296 S. W. (Mo.) 415. In that case an occupation or license tax was imposed by ordinance upon architects. They were not appropriately named in the 1908 charter as engaged in an occupation subject to such tax. The provisions of Section 8702, Revised Statutes 1919, were invoked and the ordinance was held to be invalid in that respect. That case does not militate against the validity of the tax involved in the case at bar.

Petitioner's purpose in citing Leavell v. Blades, 237 Mo. 695, 141 S. W. 893, does not appear. That case involved a state of facts and a kind of tax which appear to have no relation whatever to the case at bar.

More serious is the contention of petitioner that "an ordinance levying a twenty per cent tax on cigarettes sold in packages, and excluding from such tax other cigarettes, tobacco, cigars, chewing tobacco and all other forms of tobacco products and substitutes, violates Section 3, Article X, of the Constitution of the State of Missouri, requiring uniformity in taxation."

By the terms of the ordinance, the tax is imposed upon all sales of cigarettes in packages. The tax is doubtless uniform upon all dealers in cigarettes, since there is no contention that cigarettes are sold otherwise than in packages. The contention is that the imposition of the tax upon cigarettes in packages and the exemption of sales of tobacco in other forms constitute a tax which is not uniform upon the same class of subjects; that "tobacco is tobacco" and that there is no reasonable basis, for purposes of taxation, for putting cigarettes in one class and tobacco in other forms in a different class.

As above pointed out, Article I, section 1, paragraph 57, of the charter authorizes the city to license, tax and regulate any and every person engaged in specified occupations, businesses, etc., and to fix the license and occupation taxes to be paid thereon and therefor "and in the exercise of the foregoing powers, to divide any one or more of the various occupations," etc., into different classes. This provision furnishes full charter power for the creation of the class known as dealers in cigarettes as distinguished from dealers in tobacco in other forms.

The right of the legislative authority to put dealers of cigarettes into a class by themselves for the purpose of regulation has been fully sustained. The courts have recognized the right of the Legislature to regulate or to prohibit entirely the sale of cigarettes on the ground that their use is deleterious. [Gundling v. Chicago, 176 Ill. 340, 177 U. S. 183; State of Kansas v. Nossaman, 107 Kansas, 715; Austin v. State, 101 Tenn. 563.]

Petitioner seems to concede that such a classification is proper under the police power for purposes of regulation or suppression, but contend that such classification is improper for purposes of taxation. He cites State v. Julow, 129 Mo. 163; State v. Walsh, 136 Mo. 400; Kansas City v. Whipple, 136 Mo. 475, and State ex rel. v. Ashbrook, 154 Mo. 375.

In the Julow case, a statute making it a crime for an employer, etc., to attempt to compel or coerce any employee into withdrawal from any lawful organization or society was held unconstitutional. The only reference to the police power is that the particular statute could not be justified under the exercise of such power.

In the Walsh case, defendant was prosecuted under an act prohibiting bookmaking and pool selling at any other place than upon the premises of regular race courses. The law was held invalid because violative of the constitutional prohibition against special laws.

In the Whipple case, an ordinance of Kansas City, imposing a poll tax upon all male citizens of designated age and providing for exemption from such tax of all citizens who exercise the privilege of voting, was held invalid as violating Section 3, Article X, of the Constitution, requiring uniformity of taxes upon the same class of subjects. It was held that no legal classification could be made between those exercising the franchise and those who did not exercise it. The case went off on the want of reasonableness of the classification, and not upon the improper use of a classification made for some other purpose.

In the Ashbrook case, no reasonable basis of classification was found to support the Anti-Department Store Act authorizing the imposition of a license tax from $300 to $500 a year for each class of goods sold under conditions which described department stores and imposed no such tax when the same goods were sold under conditions which did not describe department stores. The court held, among other things, that the act could not be justified under the police power.

In none of those cases was it held or even intimated that a classification, deemed proper for purposes of regulation under the police power, could not be made available for purposes of taxation. In Gundling v. Chicago, 177 U. S. 183, the court said:

"It is not a valid objection to the ordinance that it partakes of both the character of a regulation and also that of an excise or privilege tax. The business is more easily subjected to the operation of the power to regulate, where a license is imposed for following the same, while the revenue obtained on account of the license is none the less legal because the ordinance which authorized it fulfils the two functions, one a regulating and the other a revenue function. So long as the state law authorizes both regulation and taxation, it is enough, and the enforcement of the ordinance violates no provision of the Federal Constitution."

In Viquesney v. Kansas City, supra, l. c. 497, we said: "An occupation tax may at the same time be both a police regulation and a revenue measure." The facts, which justify classification for regulation, may also justify the classification for revenue purposes.

While this court apparently has never passed upon the validity of a tax upon cigarettes, it has held valid taxes upon the sales of other commodities under classifications just as vulnerable to attack on the ground of want of uniformity. In St. Charles ex rel. Palmer v. Schulte, 305 Mo. 124, 264 S. W. 654. Division One of this court up-

held an ordinance of the city of St. Charles which imposed a tax of $25 a year upon persons selling soft drinks, other than those known as "near-beers;" $180 a year upon persons selling near-beers, and $200 a year upon persons selling both soft drinks and near-beers. RAGLAND, J., said:

"The constitutional requirement of uniformity as applied to taxes on occupations is satisfied when the burden imposed falls alike on all persons who are in substantially the same situation. [City of Aurora v. McGannon, 138 Mo. 38, 49.] 'Within the boundaries of this limitation lie broad fields of legislative discretion which should not be invaded by the courts.' [In re Watson, 17 S. D. 486.] The Legislature delegated to cities of the third class, as it was competent for it to do, authority to levy and collect a license tax on the vendors of soft drinks. Under this general power so delegated it the city of St. Charles was not bound to levy the same amount upon all vendors of soft drinks. It could in its discretion divide them upon any reasonable basis into classes, as for example, the volume of business done (City of Aurora v. McGannon, supra), or the specific character of the drinks sold (In re Watson, supra), and fix a different tax for each class. [1 Cooley, Tax. (4 Ed.) 353.] Upon the same principle peddlers have long been classified in this State for the purpose of taxation. [Sec. 9259, R. S. 1919.]

"There can be no doubt but that under well-settled principles respondent was not bound to levy and collect a license tax upon vendors of all kinds of soft drinks, if it imposed a tax upon the vendors of any. It could in its discretion have imposed a tax upon those who engaged in selling near-beers without imposing any at all upon the vendors of other soft drinks. [Carroll v. Wright, 131 Ga. 728; Coca-Cola Co. v. Skillman, 91 Miss. 677.] It is difficult, therefore, to see how the imposition of a greater tax upon the former than upon the latter constitutes an unlawful discrimination. We are unable to find any valid ground for holding the ordinance obnoxious to the constitutional provision invoked."

The cigarette tax falls alike upon all persons who are engaged in the business of selling cigarettes. They are all substantially in the same situation. The city was not bound to impose the tax upon all persons selling tobacco just because it imposed such tax upon those persons who sold cigarettes in packages. The Schulte case well supports the city in imposing the tax on cigarettes in so far as the question of uniformity is concerned.

In Viquesney v. Kansas City, supra, a tax of one cent upon each gallon of gasoline, benzine or naptha sold, transported or stored by dealers, was sustained as not violating Section 3, Article X, of the Constitution, although the sale, transportation or storage of gasoline, benzine or naphtha used on the premises of a manufacturer, cleaner or

renovator was exempted from the tax. A tax on the sale of cigarettes in packages is just as reasonable a classification for purposes of taxation as the classification of gasoline used for purposes other than manufacturing, cleaning and renovating. No reason can be urged as to the want of uniformity of the tax on cigarettes which could not equally well have been urged against the tax on sales of near-beers in St. Charles and sales of gasoline in Kansas City.

The question of the propriety of a classification, measured by Section 3, Article X, is largely one for the Legislature. The courts may not declare a particular classification unreasonable and violative of said Section 3, Article X, unless the classification made cannot be justified on any reasonable grounds. So long as the tax imposed bears alike upon every one within the class and the classification can be justified upon any reasonable theory, the tax cannot be declared violative of Section 3, Article X.

Petitioner relies upon Commonwealth v. Alden Coal Co., 251 Pa. 134, where a tax upon anthracite coal was held unconstitutional because bituminous coal was excluded from the application of the tax. There coal was said to be coal, just as petitioner now says "tobacco is tobacco," whether sold in the form of cigarettes or otherwise. The Pennsylvania case might lend some support to the contention of petitioner in this case, but unfortunately for petitioner, the Pennsylvania Supreme Court receded from its position in Heisler v. Colliery Co., 274 Pa. 448, and there sustained the very tax condemned in the Alden Coal Company case.

It is said that the imposition of the cigarette tax compels the dealer to pay a double tax. This same question was raised and decided adversely to petitioner's contention in Viquesney v. Kansas City, supra, where we said:

"It is claimed by appellant that he is compelled by this ordinance to pay a double occupation tax, because Ordinance 38141, as amended by Ordinance 39337, imposes a tax upon every retail merchant of fifty cents for each one thousand dollars or fraction thereof of gross receipts of the business operated by such merchant. This tax, however, is imposed upon every retail merchant 'except as otherwise provided in this ordinance.' The ordinance was amended by Ordinance 44965, as pointed out above, by the addition of sections levying the tax objected to here. Thus it seems this ordinance 'otherwise provided' for the taxing of appellant."

Finally it is argued that the ordinance is confiscatory of the business of practically all retail dealers in cigarettes in Kansas City and that it tends to restrain competition and to create a monopoly. This is urged because some dealers absorb the tax and are able to do so because they can buy cigarettes in large quantities and thereby obtain a cost price which enables them to pay the tax without increasing the selling price of cigarettes. Such has ever been the history of

merchandising. The same argument might be made if the tax was one per cent instead of twenty per cent (eighteen per cent in fact). There is nothing in the ordinance requiring the tax to be added to a fixed retail price and that the tax be paid by the consumer. The dealer may absorb the tax or add it to the selling price of his cigarettes just as he may take care of any other fixed charge arising in his business. He may distribute such costs among all the articles which he sells or he may load it upon one article. That is a matter which must be worked out for himself by each dealer. A dealer with abundant capital, who is able to buy in large quantities, can buy any article, taxed or untaxed, more cheaply than can the dealer with limited capital, who must buy in small quantities. He therefore can undersell the small dealer. But both must pay the tax. They are treated alike. The fact that one can undersell the other is not due to the tax. The larger and stronger dealer could sell the same product that much cheaper if he did not have to pay the tax. We are unable to understand how the tax could be illegal on such ground.

We are satisfied that the ordinance under which petitioner is being prosecuted is valid as against the attacks here made upon it. His imprisonment under the charge of violating said ordinance was therefore authorized and he should be remanded to the custody of the chief of police of Kansas City to answer the complaint there lodged against him. It is so ordered. All concur.