**CITY OF SEDALIA, ex rel. and to Use of BAUMAN, City Treasurer, v. STANDARD OIL CO. OF INDIANA, and six other cases.**

**Nos. 9653, 9652, 9654–9658.***

Circuit Court of Appeals, Eighth Circuit.

Aug. 3, 1933.

*Rehearing denied October 20, 1933.

WOODROUGH, Circuit Judge, dissenting.

Frank W. Hayes, of Sedalia, Mo. (E. W. Jones, W. D. O'Bannon, Fred M. Ross, and Lawrence Barnett, all of Sedalia, Mo., on the brief), for appellant.

Lee Montgomery, of Sedalia, Mo. (Buell F. Jones, of Chicago, Ill., Eben H. Jones, of Cleveland, Ohio, Cliff V. Peery and Walter E. Brown, both of Kansas City, Mo., and John T. Martin and John Z. Montgomery, both of Sedalia, Mo., on the brief), for appellee Standard Oil Co. of Indiana.

James T. Dolan, of St. Louis, Mo. (Guy A. Thompson, Samuel A. Mitchell, Frank A. Thompson, and Truman Post Young, all of St. Louis, Mo., on the brief), for appellee Shell Petroleum Co.

James P. Kem, of Kansas City, Mo. (W. H. Bohling, of Sedalia, Mo., on the brief), for appellees White Eagle Oil & Refining Co. and White Eagle Oil Corporation.

J. C. Denton, R. H. Wills, J. H. Crocker, I. L. Lockewitz, and J. P. Greve, all of Tulsa, Okl., for Mid-Continent Petroleum Co.

Before STONE and WOODROUGH, Circuit Judges, and MUNGER, District Judge.

MUNGER, District Judge.

In this suit, the city of Sedalia, Mo., as plaintiff, now appellant, sought to collect from the defendant, now appellee, upon a claim for taxes due to the city. For that purpose it filed a bill in equity, containing two causes of action. The defendant's motion to dismiss the bill was sustained, and this appeal was taken. Similar proceedings were had in similar cases where the Shell Petroleum Company, the Skelly Oil Company, the Sinclair Refining Company, the White Eagle Oil & Refining Company et al., the Mid-Continent Petroleum Company, and the National Refining Company were defendants. By stipulation of parties and an order of this court the appeals were consolidated for presentation in this court, with leave that the transcript of the record in the Standard Oil case should be printed and that the appeals in the other cases should abide by the decision of this court in this case.

In the first cause of action the plaintiff based its right to recovery upon the terms of an ordinance of the city passed in 1924 and entitled "An ordinance providing for the licensing of persons, firms or corporations engaged in the business of selling gasoline and transporting same through the streets of the City of Sedalia, Missouri, and providing a tax of one-half of one cent per gallon on all gasoline so sold and providing penalties for the violation of said ordinance."

Sections 1, 2, and 6 of the ordinance were as follows:

"Section 1. No person, firm or corporation shall engage in, carry on or conduct the business of selling gasoline and transporting the same in barrels, tank wagons or other containers having a capacity of more than five (5) gallons without first having obtained a license so to do from the City Clerk.

"Section 2. Every person, firm or corporation, engaged in the business defined in Section 1 hereof shall pay the City Treasurer a quarter-annual license tax of one-half of one cent per gallon on or before the 15th day of December, March, June, and September of each year for the preceding period of three months and ending as aforesaid."

"Section 6. The provisions of this Ordinance shall not apply to gasoline shipped out of this City to other cities, towns and villages by the persons subject to the payment of the license tax provided for in Section 2 hereof."

The ordinance contained provisions relating to the keeping of records of the sales of gasoline, the making of reports to the city, and imposing penalties for violation of the ordinance. The plaintiff alleged that from September 1, 1924, until March 31, 1928, the defendant was engaged in Sedalia in carrying on the business of selling gasoline and transporting it in barrels, tank wagons, and other containers having a capacity of more than five gallons, but had only paid part of the tax due to the city; that it had failed to keep an accurate record of its sales in Missouri, and had failed to file the reports required by the ordinance. The plaintiff also alleged that a trial of the issues in the case would necessitate the examination of a long and intricate account between the parties, and the examination of thousands of transactions between the defendant and its customers, and others, and prayed that the defendant should be required to account for the number of gallons of gasoline sold within the state of Missouri under the ordinance, and for judgment for the amount of taxes that should be found due.

The second cause of action sought a similar recovery of the taxes for a subsequent period under the terms of this ordinance, after it had been amended by increasing the tax imposed under section 2 from one-half cent to one cent per gallon.

The trial court was of the opinion that the ordinances were void under the terms of sections 6840 and 7287 of the Revised Statutes of Missouri 1929 (Mo. St. Ann. §§ 6840, 7287). It is conceded that the right of the city of Sedalia to impose a tax of this kind must be found in the powers conferred by the portions of section 6840 which read as follows:

"The [city] council shall have power and authority to levy and collect a license tax on * * * wholesale merchants, merchants of all kinds" and that this right is limited by the terms of section 7287, which is as follows:

"No municipal corporation in this state shall have the power to impose a license tax upon any business avocation, pursuit or calling, unless such business avocation, pursuit or calling is specially named as taxable in the charter of such municipal corporation, or unless such power be conferred by statute."

It was the view of the trial court that the avocation named in the ordinance of those "engaged in the business of selling gasoline and transporting same through the streets of Sedalia, Missouri," was not one of those specially named as taxable under section 6840. In Campbell Baking Co. v. City of Harrisonville, Mo., 50 F.(2d) 670, 674, it was determined by this court, after a review of the decisions of the Supreme Court of Missouri, that a grant of power to impose a city license tax upon "merchants of all kinds" authorized an ordinance of a city imposing a tax upon persons, firms, or corporations, "engaged in selling or delivering any goods or merchandise of any kind" at wholesale or retail to any one in the city, notwithstanding the limitations expressed in section 7287 of the Revised Statutes [Mo. St. Ann. § 7287]. This court said: "Appellant urges that, if this ordinance may be regarded as taxing a calling which is included within any of the avocations enumerated in the statute, it does this by subdividing such avocation, and that such is not permissible because the classifications for license tax purposes are made by the statute itself. It cites several Missouri cases. We have examined all of these citations as well as others. There are expressions in several opinions which, taken alone, support this contention (see City of St. Louis v. Baskowitz, 273 Mo. 543, 563, 564, 201 S. W. 870; State v. Miksicek, 225 Mo. 561, 125 S. W. 507, 511, 135 Am. St. Rep. 597; Kansas City v. Grush, 151 Mo. 128, 135, 52 S. W. 286), but in all of these cases the subclassification was in itself regarded as arbitrary. Unless these decisions be held to mean that no subclassification is allowable where such is arbitrary, it is difficult to reconcile them with Eldorado Springs v. Highfill, 268 Mo. 501, 188 S. W. 68, which is later than the Grush and Miksicek Cases, only slightly older than the Baskowitz Case and decided by the same court. Attempting to reconcile the Highfill Case with the other cases, we think the rule to be deduced is that there may not be subclassifications of an avocation enumerated in the statute unless such subclassification be

reasonable and natural; that is, not arbitrary."

Nothing is found in the cases of City of Ozark v. Hammond, 329 Mo. 1118, 49 S. W. (2d) 129, or City of Lebanon v. Joslyn (Mo. Sup.) 58 S.W.(2d) 289, decided since the opinion was written in the Campbell Baking Company Case, which requires a different conclusion as to the right of a city to subdivide a class named as "merchants of all kinds." Applying the rule adopted by this court in the case mentioned, the classification in this case of those "engaged in the business of selling gasoline and transporting same through the streets" of the city must be upheld, unless the selection of the class is arbitrary or unreasonable.

The appellee claims that the ordinance is unreasonable because it discriminates between those who may sell gasoline and haul it in containers such as are described in the ordinance and others who haul it in containers of less size, and discriminates between those who may both sell and transport gasoline as described in the ordinance within the city and others who may sell it within the city, but transport it into, out of, or through the city, and between those whose whole business is the sale and transportation of gasoline, and others who sell other articles than gasoline.

As the case is presented on this appeal, we are advised only by the bill and the motion to dismiss. The bill alleges that the defendant was engaged in the city of Sedalia in the business of selling gasoline and transporting it in barrels, tank wagons, and other containers having a capacity of more than five gallons, but it does not appear that there were any other vendors of gasoline who transported it in any manner. The presumption of the validity of an ordinance, as in case of other laws, may not be overthrown by the suggestion of discriminations that may never be proved. Pullman Co. v. Knott, 235 U. S. 23, 35 S. Ct. 2, 59 L. Ed. 105; Hodge Drive-It-Yourself Co. v. Cincinnati, 284 U. S. 335, 52 S. Ct. 144, 76 L. Ed. 323; Louisville & Nashville R. Co. v. Finn, 235 U. S. 601, 35 S. Ct. 146, 59 L. Ed. 379; Standard Stock Food Co. v. Wright, 225 U. S. 540, 32 S. Ct. 784, 56 L. Ed. 1197; 12 Corp. Jur. 786.

The trial court was also of the opinion that the ordinance was invalid for lack of uniformity in its operation because it omitted to impose a similar tax upon those who sold gasoline, but did not transport it, and upon those who transported it in containers of less capacity than five gallons, whereas section 3 of article 10 of the Constitution of Missouri requires that taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax. Assuming that there may have been others who sold or transported this commodity under these circumstances, the requirement of uniformity is met if the tax falls alike on all persons who are in substantially the same situation. In illustrating this principle the court said in City of St. Charles v. Schulte, 305 Mo. 124, 264 S. W. 654, 655:

"The Legislature delegated to cities of the third class, as it was competent for it to do, authority to levy and collect a license tax on the vendors of soft drinks. Under this general power so delegated to it the City of St. Charles was not bound to levy the same amount upon all vendors of soft drinks. It could, in its discretion, divide them upon any reasonable basis into classes, as, for example, the volume of business done (City of Aurora v. McGannon [138 Mo. 38, 39 S. W. 469], supra), or the specific character of the drinks sold (In re Watson [17 S. D. 486, 97 N. W. 463, 2 Ann. Cas. 321], supra), and fix a different tax for each class. (1 Cooley, Tax'n [4th Ed.] 353.) Upon the same principle peddlers have long been classified in this state for the purpose of taxation. Section 9259, R. S. 1919 [Mo. St. Ann. § 13318].

"There can be no doubt but that, under well-settled principles, respondent was not bound to levy and collect a license tax upon vendors of all kinds of soft drinks, if it imposed a tax upon the vendors of any. It could in its discretion have imposed a tax upon those who engaged in selling near beers, without imposing any at all upon the vendors of other soft drinks. Carroll v. Wright, 131 Ga. 728, 63 S. E. 260; Coca-Cola Co. v. Skillman, 91 Miss. 677, 44 So. 985."

See, also, Ex parte Asotsky, 319 Mo. 810, 5 S.W.(2d) 22; Automobile Gasoline Co. v. City of St. Louis, 326 Mo. 435, 32 S.W.(2d) 281.

On this record it is not made to appear that there was not a reasonable basis for the classification adopted. The suggestion that the classification adopted offends also against the Fourteenth Amendment to the Constitution of the United States is sufficiently met by what was said on that subject in Campbell Baking Co. v. City of Harrisonville, Mo. (C. C. A.) 50 F.(2d) 670.

There is a further suggestion that the ordinance is invalid because it undertook to

impose a tax upon a business conducted outside of the territorial limits of the city. The bill alleges that defendant was engaged in the city of Sedalia in conducting the business of selling and transporting gasoline, but it also alleges that it was the defendant's duty to account for all gasoline sold by it, under the terms of the ordinance, within the state of Missouri. Considering the title of the ordinance, the general purpose expressed in it, and the limitation stated in section 6, exempting from its operation gasoline shipped from Sedalia to other cities, towns, and villages, it is a reasonable interpretation of the ordinance in question that it included a tax upon dealers who, in the city of Sedalia, conducted the business of both selling gasoline and transporting it within the city, in the manner mentioned, and also upon dealers who in the city of Sedalia conducted the business of both selling gasoline and transporting it from within the city to points within the state of Missouri. No challenge has been made of the territorial authority of the city to impose the tax upon the first class, but it is asserted that the city may not impose the tax upon the second class, because of the delivery of the gasoline outside of the city. The ordinance does not undertake to measure the tax by the transportation outside of the city of Sedalia. The right of a municipal corporation to impose a tax of this kind upon an occupation or business which is conducted within the city limits, although a portion of the business was carried on outside of the city, is generally recognized. Postal Telegraph Cable Co. v. City Council of Charleston, 153 U. S. 692, 14 S. Ct. 1094, 38 L. Ed. 871; Western Union Tel. Co. v. City of Fremont, 39 Neb. 692, 58 N. W. 415, 26 L. R. A. 698; 37 Corp. Jur. 181; American Union Express Co. v. City of St. Joseph, 66 Mo. 675, 27 Am. Rep. 382; City of Carterville v. Blystone, 160 Mo. App. 191, 141 S. W. 701; American Mfg. Co. v. City of St. Louis, 270 Mo. 40, 192 S. W. 402. The delivery outside of the city of gasoline sold within the city did not invalidate that ordinance.

█ This suit was brought as a suit in equity for an accounting. There is no allegation of mutual accounts or of any other subject of equitable cognizance, but it was the theory of the bill that an accounting is authorized because it will be necessary to consider many transactions between the defendant and its customers, and to examine the books and records of carriers who transported gasoline to the defendant, and of those who sold the gasoline to defendant, as well as of those to whom defendant sold gasoline during the period in question, and because the defendant did not report all gasoline sold under the terms of the ordinance. We agree with the trial court that these facts present no grounds for maintenance of a suit in equity for an accounting. United States v. Bitter Root Dev. Co., 200 U. S. 451, 26 S. Ct. 318, 50 L. Ed. 550; Equitable Life Assur. Soc. v. Brown, 213 U. S. 25, 29 S. Ct. 404, 53 L. Ed. 682. The decree of dismissal in each of the cases will be reversed, with directions to transfer the causes to the law docket, and for further proceedings.

WOODROUGH, Circuit Judge (dissenting).

The majority conclusion is that the city of Sedalia, Mo., had the power, under the Missouri laws and decisions, to lay its tax on certain gasoline vendors in such a way as to get a revenue of so much a gallon in respect of sales of gasoline carried by such vendors to the territory outside the city, as well as in respect to their sales of gasoline inside the city. That is, the city could require the oil companies operating within its limits to pay a tax at a cent or half a cent per gallon sold by them, even though they trucked the gasoline many miles away from the city and there delivered it and consummated the sales. The decision is also that the ordinance in controversy herein, properly construed, did impose such a tax in respect to the gasoline sales of the appellant oil companies outside of the city; that the enormous business carried by the companies from the city in fleets of motortrucks for seven years was all subject to the tax, and that the city may now maintain actions at law to recover the same. I do not concur.

I do agree that under the laws and decisions of Missouri, set out in the majority opinion, the city had power to impose and collect the tax in respect of each gallon of gasoline sold inside the city, but I doubt the power to extend this particular kind of a tax to gasoline sales in outside territory. Numerous cases are referred to, holding that a city may impose an occupation tax upon its inhabitants in respect of the total volume of business done by them, even though part of the business extends outside of the city. But, although the tax involved here is in the form of an occupation tax and is ostensibly laid upon the occupation and business, it is really a sales tax and distinguishable from those occupation taxes considered in the cases relied on. Here we have a tax at so much per gal-

lon of gasoline sold, and the amount is a very substantial part of the selling price. It is apparent that in the successful operation of this tax as a revenue producer for the city, it is contemplated that the oil companies should pass the tax on to their customers at the time of sale. Then, as required by the ordinance, they must make quarterly accounting of the sales and pay the money in to the city. The tax is different in kind from the occupation taxes which are intended to be absorbed in the overhead of a business. As to this gasoline tax, the oil companies are, to practical intents, the agencies through which the city collects from the real taxpayer, the gasoline consumer, upon whom the tax is intended to fall directly. Such a tax is not, and is not intended to be, a mere expense upon the oil companies incident to the privilege of doing business in the city. It is intended to be put as a direct burden upon those who consume the gasoline. Therefore, I doubt the power of the city to raise revenue from outside its own confines in that way. Though I do not rest my dissent upon the point, I raise it in limine, because, if a placard should be exhibited at an oil station many miles out in the country, "Gasoline 10 cents; Federal Tax 1 cent; State Tax 2 cents; City of Sedalia Tax 1 cent," I think the point would suggest itself to most passers-by. It smacks of the baronial Politik of the Middle Ages.

No such situation ever arose, and no such placards were exhibited out in the country. The city passed its ordinance to raise a half a cent a gallon on sales of gasoline in 1924 and in 1928 increased the amount to a cent a gallon. It is apparent from the facts pleaded by the city in these bills in equity against the oil companies that both the oil companies and the city authorities construed the ordinance to mean that the tax was only collectible in respect of the sales of gasoline made inside the city. It conclusively appears that such was the understanding of the ordinance on the part of the city council itself, because in the amending ordinance when the Council raised the tax rate it described the original ordinance as the "Ordinance regulating the amount of tax to be paid on gasoline sold within the City of Sedalia, Missouri." As to the oil companies there is no claim that they ever took into account or tried to pass on the city tax to their customers outside the city. They never rendered account to the city of their sales in the outside territory and the facts alleged are compatible with complete acquiescence on the city's part and perfect mutuality of understanding for seven years; that is, from the passage of the ordinance in 1924 to the filing of these bills in 1931, it was the settled interpretation of the ordinance that the tax did not apply to gasoline sold outside the city.

Turning to the taxing ordinance, my opinion is that the city never intended to tax the outside business. The ordinance and amendment are appended in full in the margin,[1] and the wording is very ambiguous.

---

[1] Ordinance No. 2417 entitled:

An Ordinance providing for the Licensing of persons, firms or corporations engaged in the business of selling gasoline and transporting the same through the streets of the City of Sedalia, Missouri, and providing a tax of one-half of one cent per gallon on all gasoline so sold, and providing penalties for the violation of said Ordinance.

Be It Ordained by the Council of the City of Sedalia, Missouri, as follows:

Section 1. No person, firm or corporation shall engage in, carry on or conduct the business of selling gasoline and transporting the same in barrels, tank wagons or other containers having a capacity of more than five (5) gallons without first having obtained a license to do so from the City Clerk.

Section 2. Every person, firm or corporation engaged in the business defined in Section 1 hereof shall pay the City Treasurer a quarter-annual license tax of one-half of one cent per gallon on or before the 15th day of December, March, June and September of each year for the preceding period of three months and ending as aforesaid.

Section 3. Every person, firm, or corporation, engaged in the business defined in Section 1 hereof shall keep an accurate record of all sales of gasoline, showing the number of gallons sold, and shall, on or before the 15th day of December, March, June and September of each year, file with the City Clerk a sworn statement of the number of gallons of gasoline sold. The City Clerk or his duly authorized deputy shall be and is hereby authorized to investigate the correctness and accuracy of the returns and reports required for that purpose shall have access at all reasonable times to the books, documents and reports bearing on the number of gallons of gasoline purchased and sold.

Section 4. Every person, firm or corporation refusing or neglecting to make the report or return provided for in Section 3 hereof, or who shall make a false affidavit or return or interfere with the City Clerk or his deputy in the performance of their duties, shall be deemed guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not less than Ten Dollars ($10.00) nor more than One Hundred Dollars ($100.00).

Section 5. Any person, firm or corporation engaging in the business as defined in Section 1 hereof and refusing or failing to pay the license tax provided for in Section 2 hereof as provided in Section 2, shall be deemed guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not less than Ten Dollars ($10.00) nor more than One Hundred Dollars ($100.00), and each day of delay in the payment of said license tax shall be a separate offense.

Section 6. The provisions of this Ordinance shall not apply to gasoline shipped out of this City to other cities, towns and villages by the persons subject

In section 1 the description of the business to be licensed is "the business of selling gasoline and transporting the same in barrels," etc. The ultimate total of all the efforts of the companies would fall within the description "business of selling gasoline." They have no business of transporting, as such. But the phrase used is confusing in that it fails to exactly specify what the relationship must be between the transportation and the selling of any particular gallon of gasoline in order to give rise to the tax.

Neither in section 2, where the amount of tax is specified, nor anywhere else in the body of the ordinance, does it say whether the tax is payable in respect of gasoline sold or in respect of gasoline which is transported or in respect of gasoline which is both sold and transported, and nowhere in the body of the ordinance is anything said about where the gasoline must be sold in order to make the tax applicable.

In section 3 there is provision for the accounting to be made quarterly by the companies, and the crux of the case is whether the companies' business outside of the city is intended to be included in the accounting; no light being found in this section.

As to the exception in section 6, we have many pages of briefs about what that may mean. It is patently ambiguous, and the ambiguity ought not upon any analysis to be worked out to the prejudice of the taxpayer.

I find the most light on the real meaning

to the payment of the license tax provided for in Section 2 hereof.

Section 7. This ordinance shall become effective and be in force from and after its passage and approval.

Ordinance No. 2886 entitled:

An Ordinance repealing Section 2 of Ordinance Number 2417 and enacting a new section in lieu thereof to be known as Section 2:

Be It Ordained by the Council of the City of Sedalia, Missouri, as follows:

Section 1. That Section 2 of Ordinance Number 2417, passed by the Council of the City of Sedalia, Missouri, on the 1st day of September, 1924, and approved by the Mayor of said City on the 1st day of September, 1924, said Ordinance regulating the amount of tax to be paid on gasoline sold within the City of Sedalia, Mo., be and the same is hereby repealed and a new Section enacted in lieu thereof, said new section to be known as Section 2, to read as follows:

Section 2. Every person, firm or corporation engaged in the business of as defined in Section 1 of Ordinance Number 2417, shall pay the City Treasurer a quarter-annual license tax of one cent per gallon on or before the 15th day of December, March, June and September of each year for the preceding period of three months and ending on the 1st day of December, March, June and September.

Section 3. This Ordinance will take effect and be in force from and after its passage and approval.

and intent of the ordinance in its title. The title says that the ordinance provides "for licensing corporations engaged in the business of selling gasoline and transporting the same through the streets of the city of Sedalia, Missouri." There is not another word elsewhere in the ordinance stating where the business has to be done to be taxable. The title then goes on to say that the ordinance provides "a tax of one half a cent per gallon on all gasoline so sold."

The words "on all gasoline so sold" present the only specific declaration within the four corners of the enactment that the tax is in respect to sales, and I think that the words "tax on gasoline so sold," taken in connection with the other words, "business of selling and transporting through the streets of Sedalia," carry implications conclusive in favor of the oil companies here. That is, the clauses together mean that a particular gasoline selling business is taxable when the business is consummated by the selling and transportation of the gasoline through the city streets; but, the business which consists in hauling and selling gasoline outside and beyond the city streets is a different business, outside the purview of the ordinance. Gasoline transported and sold out on the state highways is not "so sold" within the quoted language; that is, the selling, the consummation of the whole effort of the business, is not finally effected by transportation through the city streets. Manifestly, the licensing of the oil companies by Sedalia and the imposition of this particular tax was not to cover and affect all the gasoline business of these oil companies. Presumably they recover the crude oil from subterranean lakes; they take that to refineries and refine gasoline; they effect transportation upon the high seas and through pipe lines and over railroads and highways; and there is but one phase of their business within the scope of the license and taxing ordinance, and that is the selling business consummated by transportation through the city streets—city sales.

Whether such is the true construction of the ordinance or not, at least the equity bills are clear that the conclusion is the one asserted to be right by the city council itself and applied in the administration of the ordinance throughout its existence. The declaration of the city council in 1928 that "said ordinance (was one) regulating the amount of tax to be paid on gasoline sold within the City of Sedalia, Mo.," comes directly within the language of Chief Justice Marshall in Alexander v. Alexandria, 5 Cranch, 1, 8, 3 L.

Ed. 19, when he said: "If a subsequent act on the same subject affords complete demonstration of the legislative sense of its own language, the rule which has been stated, requiring that the subsequent should be incorporated into the foregoing act, is a direction to courts in expounding the provisions of the law." The subsequent declaration of the city council does afford complete demonstration of the legislative sense of its own language, and on that ground no different sense should be attributed now when such destructive consequences inevitably result.

Also, it is elemental that, when a law involves administrative functions which necessarily reflect the construction put upon the law by those charged with administration, such administrative interpretation has great weight with the courts; and, if acted upon for a number of years, will not be disturbed except for very cogent reasons. Logan v. Davis, 233 U. S. 613, 34 S. Ct. 685, 58 L. Ed. 1121. As under this ordinance the accounting by the companies had to be rendered quarterly and the very first accounting would disclose that the sales outside the city were being excluded, there can be no reasonable doubt that there was interpretation of the statute; construction that was acted · upon and cannot be upset at this late day.

These doctrines bear with peculiar force upon such a sales tax as is here involved. If a merchant is going to have to account for such a sales tax as this one, he must know about it before he makes his sales, or his ruin is certain. It is possible that the penny a gallon would equal or even exceed the total net profit on the whole enterprise involved.

I conclude that the ordinance properly construed did not require the companies to render accounting of their outside sales; that the facts alleged show legislative and administrative construction which there are no sufficient reasons to depart from; and that the suits should have been (as they were) dismissed.